IN THE UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| FIRST RESORT, INC.,<br><br>     Plaintiff - Appellant,<br><br>     vs.<br><br>DENNIS J. HERRERA, in his official capacity as City Attorney of the City of San Francisco; BOARD OF SUPERVISORS OF THE CITY & COUNTY OF SAN FRANCISCO, THE CITY AND COUNTY OF SAN FRANCISCO,<br><br>     Defendants - Appellees. | Case No. 15-15434<br><br>U.S. District Court No. 4:11-cv-05534 SBA<br>U.S. District Court for Northern California, Oakland |

---

### APPELLEES' BRIEF

---

On Appeal from the United States District Court
for the Northern District of California

The Honorable Saundra B. Armstrong

DENNIS J. HERRERA, State Bar #139669
City Attorney
YVONNE R. MERÉ, State Bar #173594
Chief of Complex and Affirmative Litigation
ERIN BERNSTEIN, State Bar #231539
MATTHEW GOLDBERG, State Bar #240776
Deputy City Attorneys
1390 Market Street, Sixth Floor
San Francisco, California 94102-5408
Telephone:    (415) 554-3975
Facsimile:    (415) 437-4644
E-Mail:  erin.bernstein@sfgov.org
Attorneys for Defendants - Appellees
City and County of San Francisco, et al.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................iv

INTRODUCTION ...................................................................................1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ...........................1

STATEMENT OF THE CASE...................................................................2

STATEMENT OF FACTS .......................................................................4

    I.      FALSE AND MISLEADING ADVERTISING BY LIMITED
           SERVICES PREGNANCY CENTERS...............................................4

    II.     FIRST RESORT'S BUSINESS PRACTICES ....................................5

    III.    THE ORDINANCE...................................................................7

         A.    The Ordinance Bars False and Misleading Advertising
              By Limited Services Pregnancy Centers ....................................7

         B.    The Ordinance Is Intended To Prevent Several Distinct
              Harms ...................................................................................7

         C.    The Ordinance Does Not Attach Liability To Political
              Statements or Informational Statements, But Applies
              Only to Advertising About Services Offered .............................9

         D.    The Ordinance Applies Broadly To All Limited Services
              Pregnancy Centers...............................................................10

    SUMMARY OF ARGUMENT ..............................................................11

    ARGUMENT ...................................................................................12

    I.      FIRST RESORT HAS FAILED TO SHOW IT HAS
           STANDING TO BRING ITS CASE ON APPEAL ...........................12

    II.     THE DISTRICT COURT CORRECTLY HELD THAT FIRST
           RESORT'S FREE SPEECH CHALLENGE TO THE
           ORDINANCE FAILS .............................................................15

         A.    The Ordinance Permissibly Regulates False And
              Misleading Commercial Speech ...........................................15

             1.    The Ordinance Regulates Only False And
                    Misleading Commercial Speech, Which Is Not
                    Protected By The First Amendment ..............................15

2. The False And Misleading Advertising Regulated By The Ordinance Is Not "Inextricably Intertwined" With Protected Speech ............................21

3. The Ordinance Regulates Only False And Misleading Advertising, Not All Advertising ...............23

B. In the Alternative, the Ordinance Permissibly Regulates False And Misleading Non-Commercial Speech ....................24

C. The Ordinance Is Viewpoint Neutral ........................................25

D. Even If The Ordinance Were Construed To Extend Beyond False And Misleading Commercial Speech, It Would Still Survive ....................................................27

1. The Ordinance Directly Advances Compelling Governmental Interests ....................................................27

   a. Consumer Deception ...........................................29

   b. Public Health ......................................................30

   c. Protecting A Constitutional Right .......................30

2. The Ordinance Is Narrowly Tailored ............................31

III. FIRST RESORT'S VOID FOR VAGUENESS CHALLENGE FAILS BECAUSE IT IS WAIVED AND LACKS MERIT ..............32

A. First Resort Failed To Amend Its Complaint To Include The Vagueness Challenge And Therefore May Not Raise It On Appeal ...........................................................................32

B. First Resort's Vagueness Challenge Fails On The Merits ........33

IV. THE ORDINANCE IS NOT FACIALLY INVALID UNDER THE EQUAL PROTECTION CLAUSE ...........................................36

V. FIRST RESORT'S PURPORTED AS-APPLIED CHALLENGE IS BOTH WAIVED AND MOOT ...........................38

A. First Resort Has Waived Any As-Applied Challenge To The Ordinance ........................................................................38

B. Any As-Applied Challenge by First Resort Is Moot ...............40

VI. THE ORDINANCE IS NOT PREEMPTED BY STATE FALSE ADVERTISING LAW ...........................................................41

    A.    This Court Has Held That The Rationale Behind Duplication Preemption Does Not Apply To Civil Laws.........42

    B.    The Ordinance Does Not Duplicate State False Advertising Law.......................................................................45

CONCLUSION.................................................................................47

STATEMENT OF RELATED CASES ...................................................48

CERTIFICATE OF COMPLIANCE.......................................................48

CERTIFICATE OF SERVICE ..............................................................1

## TABLE OF AUTHORITIES

**Federal Cases**

*Am. Acad. of Pain Mgmt. v. Joseph*
  353 F.3d 1099 (9th Cir. 2004) ..................................................... 16, 17, 18, 19, 20

*Ariz. Cartridge Remanufacturers Ass'n, Inc. v. Lexmark Int'l, Inc.*
  421 F.3d 981 (9th Cir. 2005) ................................................................. 35

*Arizonans for Official English v. Arizona*
  520 U.S. 43 (1997) ...................................................................... 13, 40

*Arnett v. Kennedy*
  416 U.S. 134 (1974) ........................................................................ 36

*Ass'n of Nat. Advertisers, Inc. v. Lungren*
  44 F.3d 726 (9th Cir. 1994) ............................................................. 9, 29

*Barr v. Lafon*
  538 F.3d 554 (6th Cir.2008) ............................................................... 36

*Birthright v. Birthright Inc.*
  827 F. Supp. 1114 (D.N.J. 1993) .......................................................... 21

*Bolger v. Youngs Drug Products Corp.*
  463 U.S. 60 (1983) ...................................................................... 16, 21

*Bosley Medical Institute, Inc. v. Kremer*
  403 F.3d 672 (9th Cir. 2005) .............................................................. 18

*Brockett v. Spokane Arcades, Inc.*
  472 U.S. 491 (1985) ........................................................................ 13

*Butler v. Adoption Media, LLC*
  486 F. Supp. 2d 1022 (N.D. Cal. 2007) ................................................... 23

*Carpets by Carload, Inc. v. Warren*
  368 F. Supp. 1075 (E.D. Wis. 1973) ...................................................... 35

*Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*
  447 U.S. 557 (1980) .................................................................... 15, 27

*Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*
   710 F.3d 946 (9th Cir. 2013) ................................................................33

*Citizens United v. Fed. Election Comm'n*
   558 U.S. 310 (2010) ..........................................................................39

*City of Cleburne, Tex. v. Cleburne Living Ctr.*
   473 U.S. 432 (1985) ..........................................................................37

*City of Las Vegas v. Foley*
   747 F.2d 1294 (9th Cir. 1984) ............................................................29

*City of Renton v. Playtime Theatres, Inc.*
   475 U.S. 41 (1986) ..................................................................... 28, 36

*Cole v. Oroville Union High Sch. Dist.*
   228 F.3d 1092 (9th Cir. 2000) ...................................................... 13, 14

*Coleman v. Quaker Oats Co.*
   232 F.3d 1271 (9th Cir. 2000) ............................................................36

*Dariano ex rel. M.D. v. Morgan Hill Unified Sch. Dist.*
   135 S. Ct. 1700 (2015) ......................................................................36

*Dariano v. Morgan Hill Unified Sch. Dist.*
   767 F.3d 764 (9th Cir. 2014) ............................................................36

*Dex Media W., Inc. v. City of Seattle*
   696 F.3d 952 (9th Cir. 2012) ............................................................21

*Edenfield v. Fane*
   507 U.S. 761 (1993) ..........................................................................29

*Evergreen Ass'n, Inc. v. City of New York*
   740 F.3d 233 (2nd Cir. 2014) ..............................................................8

*Fargo Women's Health Organization, Inc. v. Larson*
   381 N.W.2d 176 (N.D., 1986) ............................................................19

*Fireman's Fund Ins. Co. v. City of Lodi*
   302 F.3d 928 (9th Cir. 2002) ...................................................... 42, 45

*Foti v. City of Menlo Park*
  146 F.3d 629 (9th Cir. 1998) ..............................................................13

*Friedman v. Rogers*
  440 U.S. 1 (1979) ................................................................................29

*FTC v. Pantron I Corp.*
  33 F.3d 1088 (9th Cir.1994) ...............................................................35

*Goehring v. Brophy*
  94 F.3d 1294 (9th Cir. 1996) ..............................................................30

*Gonzales v. Carhart*
  550 U.S. 124 (2007) ............................................................................30

*Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v.*
  *Mayor & City Council of Baltimore*
  721 F.3d 264 (4th Cir. 2013) ............................................... 7, 8, 16, 19

*Heller v. Doe by Doe*
  509 U.S. 312 (1993) ..................................................................... 36, 37

*Hill v. Colorado*
  530 U.S. 703 (2000) ............................................................................34

*Hodel v. Virginia Surface Mining and Reclamation Ass'n, Inc.*
  452 U.S. 264 (1981) ............................................................................30

*Hollingsworth v. Perry*
  133 S. Ct. 2652 (2013) ........................................................................12

*Howard v. City of Burlingame*
  937 F.2d 1376 (9th Cir. 1991) ............................................................13

*Hoye v. City of Oakland*
  653 F.3d 835 (9th Cir. 2011) ..............................................................31

*Human Life of Wash. Inc. v. Brumsickle*
  624 F.3d 990 (9th Cir. 2010) ..............................................................34

*Illinois ex rel. Madigan v. Telemarketing Associates, Inc.*
  538 U.S. 600 (2003) ............................................................................24

*John Doe No. 1 v. Reed*
  561 U.S. 186 (2010) ....................................................................39

*Kraft Foods Holdings, Inc. v. Helm*
  205 F. Supp. 2d 942 (N.D. Ill. 2002)...........................................23

*Lacey v. Maricopa County*
  693 F.3d 896 (9th Cir. 2012) ......................................................33

*Laird v. Tatum*
  408 U.S. 1 (1972) ........................................................................13

*Lowry v. Barnhart*
  329 F.3d 1019 (9th Cir. 2003) ....................................................40

*Lujan v. Defenders of Wildlife*
  504 U.S. 555 (1992) ....................................................................13

*Madsen v. Women's Health Ctr., Inc.*
  512 U.S. 753 (1994) ........................................................ 28, 30, 31

*Mason v. Florida Bar*
  208 F.3d 952 (11th Cir. 2000).............................................. 35, 36

*Mattel, Inc. v. MCA Records, Inc.*
  296 F.3d 894 (9th Cir. 2002) ......................................................18

*McCullen v. Coakley*
  134 S. Ct. 2518 (2014) ................................................................26

*Menotti v. City of Seattle*
  409 F.3d 1113 (9th Cir. 2005) ....................................................27

*Metromedia, Inc. v. City of San Diego*
  453 U.S. 490 (1981) ....................................................................21

*Napa Valley Publishing Co. v. City of Calistoga*
  225 F. Supp. 2d 1176 (N.D. Cal. 2002) ......................................28

*Nat'l Ass'n for Advancement of Psychoanalysis v. Cal. Bd. Of Psychology*
  228 F.3d 1043 (9th Cir. 2000)............................................... 25, 26

*Neuralstem, Inc. v. StemCells, Inc.*
2009 WL 2412126 (D. Md. Aug. 4, 2009) ........................................................... 23

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n,*
460 U.S. 37 (1983) ............................................................................................... 36

*Philip Morris USA v. City & Cnty. of San Francisco*
2008 WL 5130460 (N.D. Cal. Dec. 5, 2008) ....................................................... 27

*Planned Parenthood of Cent. & N. Arizona v. State of Ariz.*
718 F.2d 938 (9th Cir. 1983) ............................................................................... 33

*Planned Parenthood of Kansas & Mid-Missouri v. Moser*
747 F.3d 814 (10th Cir. 2014) ............................................................................. 27

*Protectmarriage.com-Yes on 8 v. Bowen*
752 F.3d 827 (9th Cir. 2014) ............................................................................... 40

*ProtectMarriage.com-Yes on 8 v. Padilla*
135 S. Ct. 1523 (2015) ........................................................................................ 40

*Reed v. Town of Gilbert, Arizona*
135 S. Ct. 2218 (2015) ........................................................................................ 25

*Riley v. Nat'l Fed. of the Blind of North Carolina, Inc.*
487 U.S. 781 (1988) ........................................................................ 21, 22, 23, 29

*Roberts v. U.S. Jaycees*
468 U.S. 609 (1984) ............................................................................................. 33

*Santa Monica Food Not Bombs v. City of Santa Monica*
450 F.3d 1022 (9th Cir. 2006) ...................................................................... 12, 13

*Tucson Woman's Clinic v. Eden*
379 F.3d 531 (9th Cir. 2004) ............................................................................... 37

*United States v. Alvarez*
132 S. Ct. 2537 (2012) ........................................................................................ 24

*United States v. Bell*
414 F.3d 474 (3d Cir. 2005) ................................................................................ 23

*United States v. O'Brien*
  391 U.S. 367 (1968) ......................................................................27

*United States v. Playboy Entm't Grp., Inc.*
  529 U.S. 803 (2000) ......................................................................27

*United States v. Schiff*
  379 F.3d 621 (9th Cir. 2004) .......................................................22

*United States v. Standring*
  2006 WL 689116 (S.D. Ohio Mar. 15, 2006) ...............................23

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*
  455 U.S. 489 (1982) ................................................................. 2, 33

*Vincent v. City Colleges of Chicago*
  485 F.3d 919 (7th Cir. 2007) .......................................................20

*Williams v. Gerber Prod. Co.*
  552 F.3d 934 (9th Cir. 2008) .......................................................35

*Williamson v. Lee Optical of Oklahoma, Inc.*
  348 U.S. 483 (1955) ......................................................................26

*Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*
  471 U.S. 626 (1985) ......................................................................16

**State Cases**

*Am. Acad. of Pediatrics v. Lungren*
  16 Cal. 4th 307 (1997) ...................................................................9

*Ardt v. Illinois Dept. of Prof'l Regulation*
  607 N.E.2d 1226 (Ill. 1992) .........................................................34

*Ark. Hearing Instrument Dispenser Bd. v. Vance*
  197 S.W.3d 495 (Ark. 2004) ........................................................34

*Baldwin v. County of Tehama*
  31 Cal.App.4th 166, 36 Cal.Rptr.2d 886 (1994) .................... 42, 44

*Bedford Motors, Inc. v. Harris*
  714 P.2d 489 (Colo. 1986) ...................................................................34

*Beeman v. Anthem Prescription Mgmt.*, LLC
  58 Cal.4th 329 (2013) ...........................................................................16

*Big Creek Lumber Co. v. Cnty. of Santa Cruz*
  38 Cal.4th 1139 (2006) ................................................................ 41, 45

*Chavez v. Sargent*
  52 Cal. 2d 162 (1959) ...........................................................................43

*Cohen v. Bd. of Supervisors*
  40 Cal.3d 277, 219 Cal.Rptr. 467 (1985) ............................... 42, 43, 44

*Conejo Wellness Cntr., Inc. v. City of Agoura Hills*
  214 Cal.App.4th 1534 (2013) ...............................................................42

*Ex parte Mingo*
  190 Cal. 769 (1923) ..............................................................................43

*Garcia v. Four Points Sheraton LAX*
  188 Cal.App.4th 364 (2010) .................................................................41

*In re Portnoy*
  21 Cal. 2d 237 (1942) .................................................................... 43, 44

*In re Sic*
  73 Cal. 142 (1887) ......................................................................... 43, 44

*Kickertz v. New York Univ.*
  971 N.Y.S.2d 271 (2013) ......................................................................20

*Korean Am. Legal Advocacy Found. v. City of Los Angeles*
  23 Cal. App. 4th 376 (1994) .................................................................43

*Mobilepark West Homeowners Ass'n v. Escondido Mobilepark West*
  35 Cal. App. 4th 32 (1995) ...................................................................43

*People ex rel. Dep't of Motor Vehicles v. Cars 4 Causes*
  139 Cal. App. 4th 1006 (2006) .............................................................20

*People v. Mosely*
    140 Cal. App. 2d Supp. 871 (Cal. App. Dep't Super. Ct. 1956).........................43

*People v. Orozco*
    266 Cal.App.2d 507 (1968) .................................................................44

*People v. Papayanis*
    101 Cal. App. 2d Supp. 918 (Cal. App. Dep't Super. Ct. 1950).........................43

*People v. Witzerman*
    29 Cal.App.3d 169, 179-80 (Cal. Ct. App. 1972) ...............................35

*Pipoly v. Benson*
    20 Cal.2d 366 (1942) ................................................................. 43, 44

*Sequoia Park Associates v. Cnty. of Sonoma*
    176 Cal. App. 4th 1270 (2009)......................................................... 43, 44

*Sherwin-Williams Co. v. City of Los Angeles*
    4 Cal.4th 893 (1993)............................................................................45

*State v. Ralph Williams' N.W. Chrysler Plymouth*
    553 P.2d 423 (Wash. 1976) ...............................................................35


**State Statutes and Codes**

California Business & Professions Code
    § 651 .....................................................................................................17
    § 17500 ......................................................................................... *passim*
    § 17500.1 .............................................................................................45
    § 17535 .................................................................................................45
    § 17536 .................................................................................................46

Cal. Welf. & Inst. Code
    § 17000 ....................................................................................................9

S.F. Admin. Code
    § 93 .........................................................................................................1
    § 93.1 ......................................................................................................1
    § 93.2(2)............................................................................................ 9, 28
    § 93.2(3) ...............................................................................................34

§ 93.2(4)...........................................................................................28, 46

§ 93.2(6)...........................................................................................28, 34

§ 93.2(7)................................................................................................34

§ 93.2(8)...........................................................................................8, 30

§ 93.2(9).......................................................................7, 8, 26, 34, 37

§ 93.2(10)............................................................................................9. 34

§ 93.2(11).........................................................................................28, 34

§ 93.2(12)....................................................................................7, 28, 34

§ 93.3(f)..............................................................................................7, 10

§ 93.3(g)................................................................................................10

§ 93.4......................................................................................7, 25, 45, 46

§ 93.4(a).......................................................................................15, 31, 46

§ 93.4(b)................................................................................................46

§ 93.5(a)..................................................................................10, 32, 34, 46

§ 93.5(b)..................................................................................10, 16, 46

§ 93.5(c)................................................................................................46

## Rules

Federal Rule of Civil Procedure

12(b)(6)..........................................................................................3, 32, 33

## Constitutional Provisions

15 U.S.C.

§ 45(a)(1) and (2)..............................................................................35

42 U.S.C.

§ 1983 .....................................................................................................2

California Const.

art. XI § 7.........................................................................................42, 43

# INTRODUCTION

It is black-letter law that false and misleading commercial speech receives no protection under the First Amendment. A false advertisement about medical services by a limited-services pregnancy center like First Resort is therefore actionable without offending the First Amendment's free-speech guarantee. First Resort attempts to avoid that conclusion by making this case about something it is not: its anti-abortion advocacy. But San Francisco's Pregnancy Information Disclosure and Protection Ordinance, S.F. Admin. Code ch. 93, §§ 93.1 et seq. ("Ordinance") is modest. The Ordinance only prohibits limited-services pregnancy centers ("LSPs") from engaging in misleading *advertising*—it does not impact any other speech. And, as First Resort admits, it is already subject to California's general prohibition on false and misleading advertising. Brief of Appellant ("BOA") at 32; Supplemental Excerpts of Record ("SER") vol. I, 77. Thus, First Resort's arguments about the reach of the Ordinance, and its attempts to make this a controversial abortion case rather than a simple truth-in-advertising case, are misplaced. For these reasons, and others discussed below, the district court correctly granted summary judgment to San Francisco.

# STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1.     Does First Resort lack standing to bring this appeal where it no longer acts as a limited-services pregnancy center and therefore is not subject to the Ordinance?

2.     Did the District Court correctly conclude that the Ordinance is facially valid because it regulates only false and misleading commercial speech, which is not protected under the First Amendment?

3.      Did First Resort waive its void for vagueness challenge, or in the alternative, fail to demonstrate that the Ordinance does not provide "fair warning of what is proscribed"? *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 503 (1982) (*"Flipside"*).

4.      Did the District Court correctly conclude that the Ordinance is facially valid because it does not violate the equal protection rights of LSPs, where the Equal Protection cause of action is co-extensive with a meritless First Amendment free speech claim?

5.      Is First Resort's as-applied challenged waived because First Resort did not argue it below, and/or moot because First Resort no longer operates a limited services pregnancy center?

6.      Did the District Court correctly conclude that the Ordinance is not preempted under a California state law duplication preemption theory because it is neither identical to state false advertising law, nor criminal in nature?

## STATEMENT OF THE CASE

First Resort filed the instant action on November 16, 2011, against defendants City and County of San Francisco, the Board of Supervisors of the City and County of San Francisco, and Dennis Herrera, in his official capacity as City Attorney of the City of San Francisco (collectively, "the City"). The initial complaint contained four causes of action under 42 U.S.C. Section 1983, challenging the validity of the Ordinance as: 1) violating the First and Fourteenth Amendments' guarantee of free speech; 2) being void for vagueness under the First and Fourteenth Amendments; 3) violating the Fourteenth Amendment's guarantee of equal protection; and 4) subject to field preemption under state law. Excerpts of

Record ("ER") vol. II, 293-308. The complaint sought a declaration that the Ordinance was "void and of no force and effect" and an injunction against the City "enforcing or directing the enforcement of the Ordinance in any respect." ER vol. II, 308. The complaint did not seek equitable relief, damages, or any other relief specific to First Resort.

The City moved to dismiss the initial complaint under Federal Rule of Civil Procedure 12(b)(6). On September 26, 2012, the District Court issued an Order granting in part and denying in part the City's motion. ER vol. I, 29-44. The District Court construed First Resort's challenge as being a facial, rather than as-applied, challenge. ER vol. I, 33-34. The District Court granted the City's motion to dismiss First Resort's vagueness cause of action with leave to amend. ER vol. I, 39. The District Court also granted the City's motion to dismiss First Resort's field preemption cause of action with leave to amend and re-plead that cause of action to allege a preemption claim based on duplication of state law. ER vol. I, 43. The Order denied the City's motion to dismiss First Resort's claim that the Ordinance violated First Resort's equal protection rights, after construing First Resort's claim as being predicated upon the fundamental right to free speech only, and not being based on a "right of conscience." ER vol. I, 40-41.

First Resort amended its pleadings, filing the First Amended Complaint ("FAC") on October 11, 2012. ER vol. II, 263-90. The FAC maintained three of the four original causes of action, but discarded the vagueness cause of action. First Resort did not alter its Prayer for Relief in the FAC, nor did it seek relief particular to First Resort. The City filed a motion under Federal Rule of Civil Procedure 12(b)(6) to dismiss the FAC's preemption claim, which was denied. ER vol. I, 24-28. The City answered the FAC. ER vol. II, 255-262.

On March 11, 2014, First Resort and the City filed cross-motions for summary judgment on all three causes of action asserted in the FAC. Portions of the summary judgment briefing and supporting documents were filed under seal because they contained documents designated confidential by First Resort. The District Court granted the City's motion in full, denied First Resort's motion, ER vol. I, 4-23, and entered judgment for the City. ER vol. I, 3. First Resort noticed its Appeal on March 9, 2015. ER vol. I, 1-2.

## STATEMENT OF FACTS

### I. FALSE AND MISLEADING ADVERTISING BY LIMITED SERVICES PREGNANCY CENTERS

False and misleading advertising by clinics that do not offer or refer clients for abortion or emergency contraception has become a consumer protection problem of national importance. Some providers of pregnancy-related services do not offer a full range of reproductive health services, but falsely advertise or mislead the public into thinking they offer a full range of services. Members of Congress have noted this issue—which has been the subject of both a Congressional report (SER vol. I, 117-35) and proposed federal legislation (*id.* at 136-40)—for over a decade. Likewise, local governments across the country have attempted to address fraud by LSPs by passing various ordinances. *Id.* at 93-116. In the fall of this year, California also passed a statute dealing with this pressing problem of consumer protection and women's health.[1]

---

[1] *See* Reproductive FACT Act, Assemb. B. 775 (Cal. 2015) (available at https://leginfo.legislature.ca.gov/faces/billNavClient.xhtml?bill_id=201520160AB 775); *see also* California Senate Committee On Health Analysis (available at "Bill Analysis" tab of *id*).

## II.    FIRST RESORT'S BUSINESS PRACTICES

First Resort formerly operated a limited service pregnancy center in San Francisco, although it appears that First Resort stopped operating this clinic sometime before filing this appeal.  *See infra* Section I.  To the extent that First Resort's former practices are at all relevant to this facial challenge, the parties agreed to the following undisputed facts for the purposes of summary judgment.[2] First Resort, Inc. is a state-licensed community medical clinic operating in San Francisco.  ER vol. II, 65 ¶32.  While First Resort offers services such as pregnancy testing, ultrasounds, and counseling, ER vol. II, 62 ¶2, it does not provide abortions or emergency contraception to its patients; it also refuses to refer its patients to other facilities for these services. ER vol. II, 63 ¶9.  At the time the City moved for summary judgment, First Resort was therefore subject to the Ordinance.

First Resort advertises medical services both online and in print.  ER vol. II, 67 ¶50.  First Resort's advertisements and official website present the organization as an unbiased, non-partisan, and non-religious organization.  ER vol. II, 146-210.  In its corporate documents, however, First Resort's stated goal is to "build an abortion-free world."  ER vol. II, 65 ¶33.

First Resort targets its advertisements to "abortion minded" women and views its online ads as competing with those of abortion providers.  ER vol. II, 66-77 ¶¶34(b), 51.  In its use of online services like Google's Adwords, First Resort pays to use hundreds of keywords for San Francisco, including "abortion" and "emergency contraception," with the terms "medical," "San Francisco," and "Bay

---

[2] It appears that First Resort has abandoned many, if not all, of these practices in the time between the Order and filing its appellate brief.  *See infra* Section I.

Area" as modifiers, so that when a potential patient does an Internet search for "abortion San Francisco," for example, a link to First Resort's website can appear near the top of the page above the search results. ER vol. II, 66 ¶¶35-37. First Resort also advertises that it provides state-licensed medical care. ER vol. II, 66 ¶38. But women who go to First Resort and request emergency contraception or choose to terminate a pregnancy are not able to access those services at First Resort and must find a new provider. ER vol. II, 63 ¶9.

The medical services and supplies offered and used by First Resort have monetary value. ER vol. II, 66 ¶¶40-41. In the 2012 fiscal year, First Resort's annual corporate expenditures were over $1 million. It received over $1 million in donations, including $300,000 for First Resort's San Francisco clinic. ER vol. II, 66 ¶39. First Resort does not directly charge customers for its services, but instead fundraises from individuals and groups to fund its medical supplies, services, and salaries. ER vol. II, 62 ¶4. First Resort capitalizes on patient demographics to generate revenue. Employees share client stories for fundraising. Management bonuses turn on such factors as: the number of new clients, the number of new and "converted" supporters, and numbers of people who mention abortion on the phone yet still make appointments. ER vol. II, 67 ¶¶46-48. Additionally, First Resort promotes a "sponsorship" program, where donors are asked to be a sponsor to fund health services for a particular number of patients. ER vol. II, 67 ¶49. First Resort has considered accepting reimbursement from government and private insurance. ER vol. II, 66 at ¶42.

III.   **THE ORDINANCE**

    A.   **The Ordinance Bars False and Misleading Advertising By Limited Services Pregnancy Centers**

San Francisco passed the Ordinance at issue in this case to address false and misleading advertising by LSPs, including First Resort.  After the Board of Supervisors compiled a substantial written legislative file and conducted several public hearings (ER vol. II, 87-139), it enacted the Ordinance on October 25, 2011, and the Ordinance took effect on December 4, 2011.  *See* S.F. Admin. Code, §§ 93.1-93.5.  The Ordinance bars false or misleading advertising by providers of pregnancy-related services that do not offer abortion services or emergency contraception, and do not refer for those services.  *Id.*, §§ 93.3(f), 93.4.  *Id.* at §§ 93.3(f), 93.4.  The City passed the Ordinance after finding a serious need to regulate false and misleading advertising by LSPs.  *Id.* at § 93.2(12).

    B.   **The Ordinance Is Intended To Prevent Several Distinct Harms**

Because of the time-sensitive and constitutionally protected nature of the decision to terminate a pregnancy, misleading advertising of abortion and emergency contraception services is of special concern to the City.  *See* S.F. Admin. Code, §93.2(9).  The harms caused by such advertisements can be felt in four distinct ways: 1) consumer confusion; 2) public health; 3) individual negative health outcomes; and 4) interference with a right protected by both the California and United States Constitutions.

The Ordinance does not regulate the statements made by LSPs regarding the appropriateness, or even safety of, abortion.  Nor does it require them to offer services they do not wish to.  Many LSPs, however, mislead women contemplating abortion into believing that their facilities offer or refer for abortion services and emergency contraception.  SER vol, I, 122-23; *see also Greater Baltimore Ctr. for*

*Pregnancy Concerns, Inc. v. Mayor & City Council of Baltimore*, 721 F.3d 264, 274-76 (4th Cir. 2013) [hereinafter "*Greater Baltimore*"] (en banc); *Evergreen Ass'n, Inc. v. City of New York*, 740 F.3d 233, 239-42 (2nd Cir. 2014).] In many jurisdictions, including San Francisco, limited services pregnancy centers have engaged in misleading advertising campaigns. LSPs often purchase "pay per click" ads on online search services such as Google, ER vol. II, 65 ¶30, so that persons searching for abortion services will see an ad for the LSP at the top of the results page. ER vol. II, 66 ¶¶35-36.

Aside from the consumer confusion that may be caused by any type of false advertising, the Ordinance also considered harms particular to false and misleading advertising related to pregnancy counseling. The Board of Supervisors found that clients considering whether to terminate a pregnancy are commonly experiencing emotional and physical stress and are therefore *especially* susceptible to false or misleading elements in advertising by LSPs. *See* S.F. Admin. Code, § 93.2(8). These circumstances raised the need for regulation that was more protective of potential consumers. *Id.*

In addition, time is a critical factor to women considering the termination of a pregnancy. Delays in deciding to terminate a pregnancy or take emergency contraception may rule out a less invasive option or even the option to terminate a pregnancy altogether. ER vol. II, 65 ¶¶28-29. Such delays may also lead to increased medical costs and safety risks, as later-term procedures cost more money and have a higher complication rate. ER vol. II, 65 ¶29. Where a woman unwittingly seeks unavailable services from an LSP, she may be delayed in accessing abortion or emergency contraception. *See* S.F. Admin. Code § 93.2(9); *see also* SER vol. I, 149-152.

8

The City also passed the Ordinance to prevent harms to the public health and to itself as a health care provider. The City is the medical provider of last resort for indigent individuals who need medical care, including women facing unexpected pregnancies. Cal. Welf. & Inst. Code § 17000. As such, the City would absorb the higher costs associated with delayed medical procedures related to abortion. ER vol. II, 65 ¶29.

Such delay harms not only individual and public health, but also causes constitutional injury, as a woman's right to choose whether to terminate a pregnancy is protected by both the federal and state Constitutions, and is protected from interference by third parties and the government. S.F. Admin. Code § 93.2(2); *see also Am. Acad. of Pediatrics v. Lungren*, 16 Cal. 4th 307, 325-331 (1997).

### C. The Ordinance Does Not Attach Liability To Political Statements or Informational Statements, But Applies Only to Advertising About Services Offered

The Ordinance does not attach liability to advocacy statements. Nor does it regulate statements describing particular procedures or their complications. The Ordinance's sole focus is on the goods and services actually or impliedly offered in a center's advertising. Indeed, the Ordinance explicitly rejects any intent to "regulate, limit or curtail … advocacy." S.F. Admin. Code § 93.2(10).

Several members of the Board of Supervisors noted that their support for the Ordinance was based on preventing consumer confusion and health harms, not "driv[ing] out" pro-life counselors, including First Resort. ER vol. II, 88-92, 128-135. At least one legislator specifically stated that he had "great things to say" about First Resort, but nonetheless voted for the Ordinance because the law was "not about First Resort." ER vol. II, 134.

The Ordinance is enforceable by the City Attorney through a civil action. S.F. Admin. Code § 93.5(a). Before the City Attorney files an enforcement action, he must provide the alleged violator with both written notice and an opportunity to cure the false, misleading, or deceptive advertising within ten days of the notice. *Id.* Once a civil action is filed, it is the court and not the City Attorney who determines whether the advertising is false or misleading; the court, not the City Attorney, issues injunctive relief and civil penalties. *Id.* at § 93.5(b). There are no criminal penalties for violation of the Ordinance.

### D. The Ordinance Applies Broadly To All Limited Services Pregnancy Centers

The Ordinance applies equally to all pregnancy centers based solely on whether they offer or refer for a full range of reproductive care services. This distinction is directly in line with a recommendation made by the American College of Obstetricians and Gynecologists, which stated that it was the ethical obligation of medical providers to either perform or refer for reproductive services including abortion. SER vol. I, 141-47. The Ordinance applies regardless of a center's reason for declining to provide or refer for abortion or emergency contraception services, and applies equally to state-licensed and non-licensed facilities. S.F. Admin. Code §§ 93.3(f), (g).

Further, as it states unambiguously, the Ordinance applies to *all* limited services pregnancy centers, regardless of whether a center's medical services are paid for by patients, insurers, the government,[3] or private donors. The Ordinance also applies equally to state-licensed medical clinics and to pregnancy counseling

---

[3] A growing number of limited service pregnancy centers charge or are reimbursed by the government for services. SER vol. I. 123-26; SER vol. II, 251-52.

centers with no medical staff. Thus, the Ordinance would apply to the paid advertisements of both a private OB/GYN office that charges patients directly for medical services and to an unlicensed pregnancy counseling center that offers free pregnancy tests and supports itself through donations.

## SUMMARY OF ARGUMENT

First Resort's appeal fails because it lacks standing to invoke this Court's jurisdiction. First Resort has apparently ceased operating as an LSP in California; its web address now directs potential clients to a new, separately incorporated entity. Because First Resort is no longer regulated by the Ordinance, it lacks any concrete stake in this case, and this Court lacks jurisdiction.

Even if First Resort had standing, its claims would fail on the merits. First Resort's First Amendment claim fails because the Ordinance only regulates false and misleading commercial speech, which is wholly unprotected by the First Amendment. A business's paid advertisement for valuable goods or services *that it does not in fact offer* is not protected speech. Despite First Resort's arguments that its advertisements are noncommercial speech, this Circuit has already held that advertising medical services to patients is commercial speech. The fact that First Resort does not charge for its services is of no consequence. Alternatively, the Ordinance regulates fraudulent noncommerical speech that is also not protected by the First Amendment. Further, the Ordinance does not discriminate by regulating speech based on viewpoint. It applies equally to all LSPs, regardless of the reason underlying the decision to offer or refer for only a limited range of services.

Even if analyzed outside of the false and misleading speech context, the Ordinance withstands heightened scrutiny because it is narrowly tailored to further

a combination of compelling government interests—protecting public health, consumer wellbeing, and the constitutional right to access reproductive health care.

First Resort's contention that the Ordinance is unconstitutionally vague also fails because this claim is waived: First Resort failed to reassert it in the FAC after its original complaint was dismissed with leave to amend. In any event, laws prohibiting misleading statements or omissions are commonplace and First Resort fails to show that this one is unconstitutionally vague.

First Resort's remaining claims are also without merit. The Equal Protection Clause's protections are coextensive with the First Amendment here, and thus First Resort's equal protection claims fail for the same reason as its speech claims. First Resort's as-applied challenge to the Ordinance fails because it is waived; First Resort repeatedly characterized its claims to the district court as facial and the district court decided them as such. Finally, the district court correctly concluded that the Ordinance is not preempted by related state laws.

## ARGUMENT

## I.     FIRST RESORT HAS FAILED TO SHOW IT HAS STANDING TO BRING ITS CASE ON APPEAL

To maintain its challenge to the provisions of the Ordinance, First Resort must establish that it has constitutional standing. *Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1033-34 (9th Cir. 2006) ("*Food Not Bombs*"). Article III of the Constitution confines the judicial power of federal courts to deciding actual "Cases" or "Controversies." *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2661 (2013). "This requires the litigant to prove that he has suffered a concrete and particularized injury that is fairly traceable to the challenged conduct, and is likely to be redressed by a favorable judicial decision." *Id.* (quoting *Lujan v.*

*Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992)).  Article III demands that an "actual controversy" persist throughout all stages of litigation, which means the requirement "must be met by persons seeking appellate review, just as it must be met by persons appearing in courts of first instance."  *Id.* (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997)).  Article III standing requires an injury that is "actual or imminent, not 'conjectural' or 'hypothetical.'"  *Cole v. Oroville Union High Sch. Dist.*, 228 F.3d 1092, 1100 (9th Cir. 2000) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)).

In the First Amendment context, a plaintiff seeking to vindicate her own constitutional rights may argue that an ordinance "is unconstitutionally vague or … impermissibly restricts a protected activity."  *Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998).  And under the doctrine of third party standing, or *jus tertii*, "an individual whose own speech or expressive conduct may validly be prohibited or sanctioned is permitted to challenge a statute on its face because it also threatens others not before the court."  *Food Not Bombs*, 450 F.3d at 1033-34 (quoting *Brockett v. Spokane Arcades, Inc*., 472 U.S. 491, 503 (1985)).  However, there are limits to third party standing even in the free speech context: "[A] litigant cannot sustain an overbreadth or *jus tertii* claim if he no longer has a personal interest in the outcome which itself satisfies the case or controversy requirement."  *Cole*, 228 F.3d at 1099 (finding students lacked standing to assert post-graduation First Amendment challenge to school policy); *see also Howard v. City of Burlingame*, 937 F.2d 1376, 1381 n.7 (9th Cir. 1991).  This standing requirement is met only "where there can be no doubt concerning the appellant's personal stake in the outcome of the controversy."  *Cole*, 228 F.3d at 1099 (quoting *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972).

First Resort no longer has standing because it has stopped operating limited service pregnancy centers in San Francisco. After engaging in both written discovery and depositions, the parties agreed on a joint statement of undisputed facts for the cross-motions for summary judgment before the district court. ER vol. II, 61-68; SER vol. II, 222-229. Although First Resort's brief presents these facts as still operative, it appears that much has changed since the close of discovery. At some point before the filing of its appellate brief, First Resort ceased using Firstresort.org as its website; that web address now re-directs to ThirdBox.com. Third Box Pregnancy Clinics, Inc. ("Third Box"), is a separate corporate entity and successor organization[4] that now operates in all three of First Resort's former locations.[5],[6]

If, as it appears, First Resort no longer operates LSPs in the City, it lacks a concrete interest in this case because the Ordinance no longer applies to it. Nor may First Resort bring a third-party challenge to the Ordinance. Like the plaintiffs in *Cole*, it no longer has a stake in this litigation's outcome.

---

[4] *Compare* search for "Third Box" and "First Resort" at http://kepler.sos.ca.gov/ (showing the two corporations are separately registered with the California Secretary of State).

[5] The physical location of Third Box's San Francisco clinic is identical to First Resort's: 450 Sutter Street, Suite 1740, San Francisco, CA. *Compare* "Bay Area Pregnancy Clinics," Third Box, https://thirdbox.com/find-pregnancy-clinic *and* ER Vol II. 176.

[6] Amanda Marcotte, *New Anti-Choice Tactic: Pretend to Be Pro-Choice,* Slate.com (Oct. 9, 2014) (available at http://www.slate.com/blogs/xx_factor/ 2014/10/09/third_box_anti_abortion_clinic_rebrands_itself_as_a_pro_choice_coun seling.html); *see also* Katie J.M. Baker, *New National Women's Clinic "Third Box" Has Anti-Abortion Past*, Buzzfeed.com (Oct. 8, 2014) (available at http://www.buzzfeed.com/katiejmbaker/new-national-womens-clinic-third-box-has-anti-abortion-past#.tyrpkdwRrA).

## II. THE DISTRICT COURT CORRECTLY HELD THAT FIRST RESORT'S FREE SPEECH CHALLENGE TO THE ORDINANCE FAILS

First Resort's free speech challenge to the Ordinance fails for three reasons. First, the Ordinance only regulates false and misleading commercial speech, a category of speech afforded *no* First Amendment protection. Second, even if the Ordinance incidentally regulates false and misleading *non-commercial* speech, an assertion with which the City disagrees, the Ordinance still plainly withstands First Amendment scrutiny. Third, were the Court to apply the *Central Hudson* commercial speech test to the Ordinance, the City's regulation of advertisements for pregnancy-related services is clearly permissible. The success of First Resort's facial challenge depends not upon First Resort's own practices, but upon a demonstration that the Ordinance is invalid in *all* circumstances or plainly lacks legitimate sweep. First Resort fails on either account.

### A. The Ordinance Permissibly Regulates False And Misleading Commercial Speech

#### 1. The Ordinance Regulates Only False And Misleading Commercial Speech, Which Is Not Protected By The First Amendment

The Ordinance is expressly and exclusively directed at false and misleading commercial speech, which is not due any First Amendment protection. *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 563 (1980) ("*Central Hudson*") ("[T]here can be no constitutional objection to the suppression of commercial messages that do not accurately inform the public about lawful activity."). There can be no dispute that only *false and misleading* speech is regulated by the Ordinance. *See* S.F. Admin. Code, § 93.4 (a) (It is unlawful to make statements concerning services offered that are "untrue or misleading."); *id.*

at § 93.5 (b) (The City Attorney is empowered, after providing notice and an opportunity to cure, to bring a civil action to correct the effects of the "false, misleading, or deceptive advertising.").

The Ordinance is also expressly directed at commercial advertising. Indeed, in its ruling dismissing First Resort's vagueness challenge, this Court recognized that the scope of the Ordinance is limited to false and misleading advertising: "the Court finds that a person of common intelligence could discern that the conduct proscribed by the Ordinance is false and misleading advertising, and not simply any statement made by the limited services pregnancy center." ER vol. I, 35-36.

First Resort uses its own business practices to contend the Ordinance is facially invalid, but the facts indicate otherwise. First Resort is a state-licensed medical clinic that places paid advertisements for its medical services in print and online. Where the commercial character of speech is a close question, courts analyze three factors; this analysis *broadens* the category of commercial speech beyond speech merely proposing a commercial transaction. *See Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626, 637 (1985); *Beeman v. Anthem Prescription Mgmt.*, LLC, 58 Cal.4th 329, 352 (2013). The three "*Bolger* factors" look to the following: "(1) is the speech an advertisement; (2) does the speech refer to a specific product or service; and (3) does the speaker have an economic motivation for the speech." *Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60, 66-67 (1983). All three factors need not be present for speech to be commercial. *Greater Baltimore*, 721 F.3d at 285.

The first two factors were undisputed below, so they cannot be fairly challenged here. ER vol. I, 12, quoting SER vol. I, 209; ER vol. II 67 ¶50. Under this Court's precedent, First Resort's advertisement of medical services satisfies the third *Bolger* factor. In *American Academy of Pain Management*, this Court

considered whether false or misleading advertisements for medical services are properly regulated by the state as commercial speech. *See, Am. Acad. of Pain Mgmt. v. Joseph*, 353 F.3d 1099, 1106 (9th Cir. 2004). In that case, a non-profit entity and two doctors brought a facial challenge to a provision of state law that prohibits doctors from advertising they are "board certified" unless the certifying organizing meets certain requirements. *Id*. at 1106. This provision is a subsection of California Business and Professions Code section 651—a statute with which First Resort admits it must comply[7]—which generally prohibits false and misleading advertising by licensed health care professionals. *Id*. at 1102. The district court held the statute regulated commercial speech, and plaintiffs appealed. This Court affirmed, finding all three *Bolger* factors were satisfied:

> The statute [] identifies that the object of its regulation is "advertising." The advertising regulated relates to a specific product, medical services. Finally, the advertiser has an economic motive for engaging in this kind of speech, which is to solicit a patient base.

*Id*. at 1106 (9th Cir. 2004). Nothing in the opinion suggests that the "patient base" must consist of paying clients. Such a limitation would make no sense because it would require potential patients to know the business model of a clinic before knowing whether the advertisement is trustworthy. The case law examining the "economic motive" factor has not relied upon the subjective intent of the speaker to establish such a motive (were that so, an advertiser of medical services could evade regulation merely by disclaiming such a motive) but instead examines objectively whether the purpose of the speech is to grow a patient base. *Id*.

---

[7] First Resort conceded in prior briefing that it is subject to other generally applicable regulations of health care providers, including the limitations on false advertising discussed in *American Academy of Pain Management*. *See* SER vol. I, 77 ("[L]icensed facilities such as First Resort are already subject to numerous generally applicable regulations. *See*, e.g., Cal. Bus. & Prof. Code § 651 …)

As with the plaintiffs in *American Academy of Pain Management*, First Resort chose to advertise in the context of medical services—advertising itself as a state-licensed medical clinic and purchasing medical terms on Google Adwords. ER vol. II, 66 ¶¶35-37.  This choice strengthens the application of the commercial speech doctrine to First Resort's practices.  Rather than offering its counseling or religious outreach services, First Resort offers commercially valuable services.  This promise of medical care distinguishes First Resort's speech from that of a political party or a church seeking new members.  A political party or church participates in the marketplace of ideas; First Resort participates in the marketplace for medical services.  Within this marketplace, First Resort admits that it uses its advertising to compete with other providers of pregnancy-related services.  ER vol. II, 67 ¶51. Money received through fundraising, including a per patient "sponsorship" program, reimburses First Resort, so the patient base its advertising of medical services attracts corresponds to the amount of funding it receives.

First Resort's advertising is commercial because it offers services within a competitive marketplace for those services.  This is no less true because First Resort does not charge for those services.  When evaluating commercial speech in the context of the Lanham Act, this Court has held that the "appropriate inquiry" is whether the defendant "offers competing services to the public" not whether the defendant offers "any actual *sale* of goods and service."  *Bosley Medical Institute, Inc. v. Kremer*, 403 F.3d 672, 679 (9th Cir. 2005) (emphasis in original).  The same inquiry is relevant here.  *See id*. at 677 (noting consistencies in the commercial speech inquiry under the Lanham Act and under the First Amendment); *Mattel, Inc. v. MCA Records, Inc*., 296 F.3d 894, 905 (9th Cir. 2002) (same).

First Resort's right to falsely advertise cannot merely be an artifact of its reimbursement scheme. A clinic cannot insulate the false and misleading advertising of valuable professional services by temporarily preferring one source of cost reimbursement to another. First Resort considered receiving government or other insurance funding, ER vol. II, 66 ¶42, which would render its advertising commercial, even under its own analysis. Further, First Resort's business model provides valuable medical services in exchange for women's valuable time. To suggest that only proposals for direct fee-for-service transactions constitute commercial speech would allow companies like Facebook and Google, both of which offer free services in exchange for user data, to falsely advertise their services. This theory would break new ground, and is unsupported by current First Amendment law.

Other courts that have considered "free" services offered by LSPs like First Resort have used an analysis similar to this Court's *American Academy of Pain Management* decision to find that such advertisements fit squarely within commercial speech doctrine. The Fourth Circuit has directly considered whether advertising by an LSP that provides free services can be commercial speech, and concluded that it can. *See Greater Baltimore*, 721 F.3d at 286, citing *Fargo Women's Health Organization, Inc. v. Larson*, 381 N.W.2d 176 (N.D., 1986) ("*Fargo Women's Health*"). In *Greater Baltimore*, the Fourth Circuit approved of the North Dakota Supreme Court's analysis in *Fargo Women's Health*, which examined the context of an LSP's advertisements to determine whether the advertisements were commercial. The *Greater Baltimore* court reasoned that, because the clinic's advertisements were "placed in a commercial context and are directed at the providing of services rather than toward an exchange of ideas," the solicitation of patients for medical services was classic commercial speech. Like

the Ninth Circuit in *American Academy of Pain Management*, the Fourth Circuit held that "[i]n effect, the Help Clinic's advertisements constitute promotional advertising of services through which patronage of the clinic is solicited, and in that respect constitute classic examples of commercial speech." *Id*.

It would not be reasonable to limit *American Academy of Pain Management*'s holding to paid services only. Many healthcare professionals provide free services, and a rule exempting them false advertising regulations would harm the state's most vulnerable patients. Absent regulation, for instance, a clinic could advertise free HIV testing and treatment for gay men, but after testing, offer only "counseling" designed to change patients' sexual orientation. Physicians seeking patients for unpaid clinical trials could advertise by promising impossible results. A free pediatric clinic could advertise it was the top-ranked medical provider in the area, even if it had an atrocious safety record and was on the verge of losing its license. Fortunately, state false advertising law has never been construed so narrowly.

First Resort's suggestion that non-profits cannot engage in commercial speech is similarly unavailing. Even a casual perusal of prior false advertising cases reveals numerous examples of non-profit companies sued for false or misleading advertising. *See, e.g. People ex rel. Dep't of Motor Vehicles v. Cars 4 Causes*, 139 Cal. App. 4th 1006, 1017 (2006) (finding advertising of "free" towing by nonprofit was deceptive and therefore actionable); *Kickertz v. New York Univ.*, 971 N.Y.S.2d 271 (2013) (false advertising case against nonprofit university); *Vincent v. City Colleges of Chicago*, 485 F.3d 919, 925 (7th Cir. 2007) (upholding a false advertising complaint against City Colleges of Chicago, a nonprofit corporation). At least one federal district court has found even the fundraising letters of a nonprofit LSP, Birthright, Inc., to be commercial speech in the context

of a federal false advertising Lanham Act cause of action. *Birthright v. Birthright Inc.*, 827 F. Supp. 1114, 1138 (D.N.J. 1993) (Federal false advertising law "provides for liability for misrepresentations not only in commercial advertising but also in the 'promotion' of services.").

The success of this appeal does not depend upon whether First Resort's own advertisements constitute commercial speech—but even so, First Resort's advertisements are commercial speech, whether consumers, Medi-Cal, or any other source reimburses First Resort for its costs.[8]

> **2.** **The False And Misleading Advertising Regulated By The Ordinance Is Not "Inextricably Intertwined" With Protected Speech**

First Resort argues that even if some of its advertising is commercial speech, that speech is "inextricably intertwined" with non-commercial speech on its website and therefore must be treated as fully protected speech. BOA at 24-26. The District Court properly rejected this argument. ER vol. I, 16.

First Resort relies on *Riley v. Nat'l Fed. of the Blind of North Carolina, Inc.*, 487 U.S. 781 (1988), which held that when commercial speech is "inextricably intertwined" with core non-commercial speech, heightened scrutiny applies. *Id.* at 796. This rule "operates as a narrow exception to the general principle that speech meeting the *Bolger* factors will be treated as commercial speech." *Dex Media W., Inc. v. City of Seattle*, 696 F.3d 952, 958 (9th Cir. 2012). First Resort misconstrues the scope of this exception. The *Riley* test is rooted in a concern about the ability of courts to "parcel out the speech, applying one test to one phrase and another test

---

[8] To the extent that First Resort's facial challenge is based on an over-breadth theory, such challenges do not apply in the commercial speech context. *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 505, n. 11 (1981).

to another phrase." *Id.* The Ordinance's prohibition against false and misleading advertising raises no such concern.

As a threshold matter, *Riley* does not apply to First Resort's facial challenge because the Ordinance on its face regulates only false and misleading advertising, not speech that is inherently combined with protected speech. This contrasts with the ordinance at issue in *Riley*, which restricted the charitable solicitation activities of professional fundraisers. The Supreme Court found this category of speech was "inextricably intertwined" with otherwise fully-protected speech. *Riley*, 487 U.S. at 796. This is not the case for false and misleading advertising. If First Resort were correct that the Ordinance is facially invalid for this reason, every false and misleading advertising regulation would be invalid because of the mere possibility that the regulated advertising might be combined with protected speech. Fortunately, this is not the law: even *Riley* maintained that anti-fraud statutes are enforceable. *Id.* at 795.

First Resort's as-applied argument fails, too, because it is easy to distinguish between First Resort's advertising and informational speech. A portion of First Resort's advertising is through Google Adwords. ER vol. II, 66 ¶35. These ads appear at the top of Google search results in response to searches such as "abortion San Francisco." *Id.* at ¶35. They include a link to First Resort's website, but they are easily distinguished from the website, and the ads themselves contain no protected speech.

Nor is there any merit to First Resort's argument that advertising on its website is protected speech because the website includes some non-commercial information. BOA at 25-26. First Resort cannot use the protected portions of its website to "piggy-back [] fraudulent commercial speech into full First Amendment protection." *United States v. Schiff*, 379 F.3d 621, 629 (9th Cir. 2004) (holding

that the protected expression in defendant's book could not be used to shield him from liability). It is common for websites to include both commercial speech and protected speech. This does not mean that an entire website is protected speech. *See, e.g.*, *United States v. Bell*, 414 F.3d 474 (3d Cir. 2005) (rejecting the defendant's argument that his website—which both advocated several legal theories on why Americans are not obligated to pay income taxes and also offered fraudulent tax services—was protected by *Riley* because his advertisement for fraudulent tax advice was "inextricably intertwined" with his protected political expression); *Kraft Foods Holdings, Inc. v. Helm*, 205 F. Supp. 2d 942, 952 (N.D. Ill. 2002); *Neuralstem, Inc. v. StemCells, Inc.*, 2009 WL 2412126 (D. Md. Aug. 4, 2009); *Butler v. Adoption Media, LLC*, 486 F. Supp. 2d 1022, 1059 (N.D. Cal. 2007); *United States v. Standring*, 2006 WL 689116, at \*13 (S.D. Ohio Mar. 15, 2006). This is because the mere "[p]ackaging [of] a commercial message with token political commentary does not insulate commercial speech from appropriate restrictions." *Bell*, 414 F.3d at 480.

### 3. The Ordinance Regulates Only False And Misleading Advertising, Not All Advertising

First Resort contends that the Ordinance regulates more than false and misleading advertising, and applies to *all* advertising because it does not put First Resort or other LSPs on notice as to what advertising statements or omissions might be considered false or misleading. BOA at 26-27. To the extent that such purported uncertainty applies here, it would apply to any false and misleading advertising prohibition that included omissions within its purview.

This is also merely a restatement of First Resort's void for vagueness challenge. *See* ER vol. I, 35 (describing First Resort's vagueness challenge). In evaluating that same argument, the District Court correctly found that "a person of

common intelligence could discern that the conduct proscribed by the Ordinance is false and misleading advertising, and not simply any statement made by the limited services pregnancy center." *Id.* As discussed below, First Resort has waived its vagueness challenge and this challenge fails on the merits. *See infra* section III.

### B. In the Alternative, the Ordinance Permissibly Regulates False and Misleading Non-Commercial Speech

The Ordinance regulates a category of false and misleading speech due no First Amendment protection, even if evaluated outside of the commercial speech framework. Although the Supreme Court has been unwilling to categorically put *all* false statements outside the First Amendment's protections, it has held that speech involving fraud "or some other legally cognizable harm associated with a false statement" is unprotected. *United States v. Alvarez*, 132 S. Ct. 2537, 2545 (2012). "Where false claims are made to effect a fraud or secure moneys or other valuable considerations . . . it is well established that the Government may restrict speech without affronting the First Amendment." *Id.* at 2547; *Illinois ex rel. Madigan v. Telemarketing Associates, Inc.*, 538 U.S. 600, 611-12 (2003) (Because "the First Amendment does not shield fraud," even "fraudulent charitable solicitation is unprotected speech."). In *Alvarez*, the Court took pains to note that, although "falsity alone may not suffice to bring the speech outside the First Amendment, . . . a knowing or reckless falsehood" may be wholly unprotected. *Alvarez*, 132 S. Ct. at 2545; *see also Madigan*, 538 U.S. at 620 (noting that knowledge and intent requirements "provide sufficient breathing room for protected speech").[9]

---

[9] The question of whether charitable solicitations are commercial speech was not raised or decided in *Madigan*. Nor is it raised in this case, because "[i]t is First Resort's advertising—not its fundraising—that is at issue." ER vol. I, 16.

Here, the Ordinance regulates false and misleading speech to prevent the defrauding of healthcare consumers and to protect those consumers' access to constitutionally protected care. Even outside of the commercial speech framework, this species of false and misleading speech is due no protection: it is made to effect a fraud on women seeking vital health care and to secure a valuable consideration—patients' time and presence at the LSP. Further, the Ordinance contains both knowledge and intent requirements sufficient to provide "breathing room" for protected speech. *See* S.F. Admin. Code § 93.4 (prohibiting false advertising "with the *intent* not to perform the services" advertised, or "that the [LSP] *knows or . . . should know* to be untrue or misleading") (emphasis added). Thus, even if assessed as non-commercial speech, the Ordinance still regulates speech due no First Amendment protection.

### C. The Ordinance Is Viewpoint Neutral

First Resort's contention that the Ordinance discriminates on viewpoint also lacks merit; the Ordinance is viewpoint neutral and does not trigger strict scrutiny. To determine whether a law is content-based, courts assess whether the law by its own terms prefers certain kinds of speech over others. Simply put, a law is not viewpoint neutral if the government suppresses speech because of its message. *See, e.g.*, *Nat'l Ass'n for Advancement of Psychoanalysis v. Cal. Bd. Of Psychology*, 228 F.3d 1043, 1055 (9th Cir. 2000) ("*NAAP*").

In support of its cursory argument that the Ordinance is content-based, First Resort relies exclusively on *Reed v. Town of Gilbert, Arizona*, 135 S. Ct. 2218 (2015). But this reliance is misplaced. In *Reed*, the applicability of the ordinance at issue was dependent upon the subject matter of the sign—i.e., whether the content was ideological, political or directional. Here, by contrast, the subject matter of the speech is not the relevant touchstone. ER vol. I, 17 n.5 ("The

applicability of the Ordinance is dependent upon the services offered by a clinic, not the particular views espoused or held by the clinic."). And, as the District Court found, "there are potentially a number of reasons that a pregnancy services . . . clinic may choose not to offer abortions that are completely unrelated to its views on abortion—such as financial or logistical reasons." *Id.* Such reasons may include fear of protesters, and lease or deed restrictions. *See* SER vol. I, 36 n. 6-8.

Where a legislature regulates one part of an industry in order to more closely address the problem before it, such tailoring is not the same as suppression of speech due to its content. *See McCullen v. Coakley*, 134 S. Ct. 2518, 2531-32 (2014) (finding buffer zone law applying only at abortion clinics content-neutral because statute did not draw content-based distinctions on its face). Legislatures may implement different regulatory schemes for different areas of a profession, based on the services offered. *See, e.g.*, *Williamson v. Lee Optical of Oklahoma, Inc.*, 348 U.S. 483, 489 (1955) ("[R]eform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. The legislature may select one phase of one field and apply a remedy there, neglecting the others.") (internal citations omitted); *NAAP*, 228 F.3d at 1053 ("It is not irrational for the Legislature to progress one step, or one profession, at a time").

Here, the City chose to implement a different regulatory scheme for limited service pregnancy centers for an important reason. As explained in the legislative findings, there is a greater possibility of serious harm when a clinic does not offer or refer for a full range of services. S.F. Admin. Code § 93.2(9). Restricting the scope to LSPs makes the Ordinance narrowly tailored to further the City's interest—not a content-based regulation. And to the extent that First Resort's viewpoint neutrality argument is based on a purportedly illicit legislative motive,

such motives are irrelevant to the constitutionality of the Ordinance and are not present here.[10]

**D.**     **Even If The Ordinance Were Construed To Extend Beyond False And Misleading Commercial Speech, It Would Still Survive**

Even if the Ordinance regulated protected speech—which it does not—it would survive. Under *Central Hudson*, three factors for determine the validity of an enactment restricting commercial speech: 1) whether the asserted governmental interest is substantial, 2) whether the regulation directly advances the governmental interest asserted, and 3) whether it is not more extensive than is necessary to serve that interest. *Central Hudson*, 447 U.S. at 566. Under *Playboy*, similar but more stringent factors apply when evaluating protected non-commercial speech. *United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 813 (2000). The Ordinance survives both levels of scrutiny.

**1.**     **The Ordinance Directly Advances Compelling Governmental Interests**

The Ordinance serves three substantial and compelling governmental interests: 1) preventing consumer deception; 2) preventing public health harms

---

[10] Prior to the Ordinance's enactment, the City Attorney sent First Resort a letter pursuant to his authority under state law to ask that First Resort substantiate or correct false and misleading statements in its advertising. ER vol. II, 82-83. First Resort mischaracterizes the letter and the law in citing this letter as evidence of bias against pro-life speech. The letter itself explicitly states that "First Resort is certainly entitled to offer pro-life counseling to women who desire such services," but cautions that it "may not lawfully attract its customers by advertising in a misleading fashion." ER vol. II, 82-83. Even were the City Attorney's letter somehow evidence of a desire to change First Resort's practice, legislative motive has no bearing on whether the Ordinance itself is constitutional. *See, e.g., United States v. O'Brien*, 391 U.S. 367, 383 (1968) (The "Court will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive."); *see also Menotti v. City of Seattle*, 409 F.3d 1113, 1130 n.29 (9th Cir. 2005); *Philip Morris USA v. City & Cnty. of San Francisco*, 2008 WL 5130460 (N.D. Cal. Dec. 5, 2008); *Planned Parenthood of Kansas & Mid-Missouri v. Moser*, 747 F.3d 814 (10th Cir. 2014) (upholding law that legislators stated was designed to defund Planned Parenthood).

caused by delayed access to reproductive health; and 3) protecting access of a recognized constitutional right. These interests are explicitly called out in the Ordinance's findings. *See* S.F. Admin. Code § 93.2 (6) (consumer deception); *id.* §§ 93.2(4), 93.2(11) (public health harms); *id.* §§ 93.2(2), 93.2(12) (protecting a constitutional right). By prohibiting LSPs from fraudulently advertising their services, the Ordinance directly advances each of these interests, which are more than sufficient to justify the ordinance. *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 767-68 (1994) ("[T]he *combination* of these governmental interests is quite sufficient to justify an appropriately tailored injunction to protect them") (emphasis added).

There is ample evidence in the record that LSPs have deceived consumers about their services by using false and misleading advertising, causing public health harms and interfering with the constitutionally-protected right of women to access reproductive healthcare. Though First Resort insists that the City produce evidence specific to San Francisco—in the form of women testifying that a San Francisco LSP's advertisement caused them to delay access to time-sensitive healthcare, BOA at 28-29—such specific (and intimate) testimony is not required before the City may act to prevent harm to its citizens.

Cities are not required to wait until they can identify specific examples of local harm in order to regulate speech; they can act prophylactically based on the experience of other cities. *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 50 (1986); *see also Napa Valley Publishing Co. v. City of Calistoga*, 225 F. Supp. 2d 1176, 1193 (N.D. Cal. 2002). "The First Amendment does not require a city, before enacting such an ordinance, to conduct new studies or produce evidence independent of that already generated by other cities." *Renton*, 475 U.S. at 51-52. Further, "[t]he relevant governmental interest is determined by objective indicators

as taken from the face of the statute, the effect of the statute, comparison to prior law, facts surrounding enactment of the statute, the stated purpose, and the record of proceedings." *City of Las Vegas v. Foley*, 747 F.2d 1294, 1297 (9th Cir. 1984). As *Foley* makes clear, the legislative record is only one of many types of evidence pertinent to evaluating the government's proffered interest. Here, the record and other objective indicators show that the Ordinance prevents three distinct and substantial harms—consumer deception, public health, and interference with access to reproductive care.

### a.      Consumer Deception

The ordinance directly targets the deception of health care consumers by prohibiting false and misleading advertising by LSPs. There is ample evidence in the record that LSPs, both locally and nationally, have deceived consumers about their services, resulting in various legislative attempts to prevent such harms.

Preventing consumer deception is a substantial government interest that justifies regulation of false and misleading speech. *See, e.g.*, *Friedman v. Rogers*, 440 U.S. 1, 15 (1979) ("[T]he State's interest in protecting the public from the deceptive and misleading use of optometrical trade names is substantial."); *Ass'n of Nat. Advertisers, Inc. v. Lungren*, 44 F.3d 726, 732 (9th Cir. 1994). This end alone is sufficient to support the Ordinance. *Edenfield v. Fane*, 507 U.S. 761, 768-69 (1993) (noting the state interest in preventing consumer deception permits the government to ban fraudulent or deceptive commercial expression without further justification); *Riley v. Nat'l Fed'n of the Blind of N. Carolina, Inc.*, 487 U.S. 781, 792 (U.S. 1988) ("The interest in protecting . . . the public[] from fraud is, of course, a sufficiently substantial interest to justify a narrowly tailored regulation.").

### b.     Public Health

There is also evidence that false and misleading advertising by LSPs can harm consumers by delaying access to care.  Protecting public health and safety "is a paramount governmental interest."  *Hodel v. Virginia Surface Mining and Reclamation Ass'n, Inc*., 452 U.S. 264, 300 (1981); *see also Goehring v. Brophy*, 94 F.3d 1294, 1300 (9th Cir. 1996) ("Public health and well-being have been recognized as compelling governmental interests in a variety of contexts."); *Madsen v. Women's Health Center, Inc.*, 512 U.S. 753, 767-68 (1994).

It is undisputed that delay in accessing abortion care may lead to public health harms in the form of complications for the woman involved.  ER vol. II,65 ¶29.  Advertising a time-sensitive service that one does not offer may delay a person in accessing that service; this is particularly true with vulnerable consumers that may lack monetary resources or the ability to take additional time off of work. If, as the Supreme Court noted in *Gonzales v. Carhart*, 550 U.S. 124, 159 (2007), the decision to terminate a pregnancy is "fraught with emotional consequence" and anxiety, potential consumers may be particularly vulnerable to false and misleading advertising preying on those emotions.  S.F. Admin. Code § 93.2(8) ("Clients seeking information regarding options to terminate a pregnancy commonly are experiencing emotional and physical stress and are therefore especially susceptible to false or misleading elements in advertising by CPCs."). First Resort ignores this and argues that the City can show harm only by identifying specific women who were deceived by LSPs' false advertising and therefore struggled to obtain abortions in San Francisco.

### c.     Protecting A Constitutional Right

The City also has a vital interest in protecting the constitutional rights of its residents, including the right to reproductive healthcare.  "[T]he State has a strong

interest in protecting a woman's freedom to seek lawful medical or counseling services in connection with her pregnancy." *Madsen*, 512 U.S. at 767-68; *see also Hoye v. City of Oakland*, 653 F.3d 835, 853 (9th Cir. 2011) ("[E]nsuring access to women's health care may well be a sufficiently compelling state interest for purposes of strict scrutiny."). The Ordinance directly advances this interest by addressing a known impediment to the free exercise of this constitutional right.

These three interests—whether examined singly or, as suggested in *Madsen*, in combination—justify a narrowly tailored regulation of LSPs' advertising by the City.

### 2. The Ordinance Is Narrowly Tailored

The Ordinance is the most narrowly tailored approach to preventing the harms caused by the false advertising of pregnancy services. The Ordinance is limited to LSPs, rather than broadly prohibiting false advertising across an entire industry. By virtue of failing to provide or refer for abortion or emergency contraception, LSPs are outside of the mainstream of recommended pregnancy-related care, SER vol. I, 141-147, and represent the narrowest category of entities that have the potential to cause harm by falsely advertising the services offered. LSPs also have a documented history of false advertising practices. Tailoring the Ordinance to false and misleading advertising by LSPs targets the precise concern, rather than requiring preemptive disclosures by a broader category of speakers that have not historically misrepresented their services.

Nor does the Ordinance, as First Resort contends, reach "innocent" speech. BOA at 33. By its design, the Ordinance only prohibits false and misleading speech. S.F. Admin. Code § 93.4 (a). Further evidence of the narrow reach of the Ordinance is its requirement that the City Attorney give notice and an opportunity

to cure any false or misleading advertising *before* suit may be brought. *Id.* § 93.5(a).

First Resort offers no more limited alternative. Among the alternatives First Resort offers are 1) that the City prosecute false advertising by LSPs under California Business and Professions Code section 17500 or 2) engage in a public education campaign. The first alternative is curious, as First Resort has claimed that its advertising is protected speech and is therefore not subject to false advertising laws. The second alternative cannot be seriously considered as defeating a narrow tailoring analysis: because the government can always do public education, First Resort's argument would result in the nullification of every governmental attempt to regulate speech for consumer and public health protection.

## III. FIRST RESORT'S VOID FOR VAGUENESS CHALLENGE FAILS BECAUSE IT IS WAIVED AND LACKS MERIT

### A. First Resort Failed To Amend Its Complaint To Include The Vagueness Challenge And Therefore May Not Raise It On Appeal

The District Court dismissed First Resort's void for vagueness claim with leave to amend. In granting the City's Rule 12(b)(6) motion to dismiss the vagueness cause of action, the Court stated:

> First Resort has failed to allege any compelling grounds for declaring the Ordinance void on the grounds of vagueness. Though it is questionable whether First Resort will be able to rectify this deficiency, the Court, out of an abundance of caution, will permit First Resort an opportunity to amend this claim should it desire to do so. Accordingly, the Court dismisses First Resort's second claim *with leave to amend*.

ER vol. I, 39 (emphasis added). First Resort then filed the First Amended Complaint (FAC), which is the operative pleading before the Court for the decision

from which First Resort now appeals, without re-pleading the void for vagueness claim. ER vol. II, 263-277.[11]

Because First Resort abandoned the vagueness claim after its dismissal with leave to amend, it cannot resurrect this claim on appeal. This Court has determined that where claims are dismissed with leave to amend at the Rule 12(b)(6) stage, the claims must be re-pled or are waived for appeal. *See, e.g.*, *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 973 n.14 (9th Cir. 2013); *Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012).

### B. First Resort's Vagueness Challenge Fails On The Merits

Even had First Resort not abandoned its void for vagueness cause of action, the cause of action also fails as a matter of law. Courts evaluating a vagueness challenge ask "whether the law affords fair warning of what is proscribed." *Flipside*, 455 U.S. at 503. An ordinance is void for vagueness only where it is articulated "in terms so vague that persons of common intelligence must necessarily guess at its meaning." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 629 (1984). Courts are more tolerant of possible vagueness in laws that—like the Ordinance—impose civil rather than criminal penalties. *Flipside*, 455 U.S. at 499; *see also Planned Parenthood of Cent. & N. Arizona v. State of Ariz.*, 718 F.2d 938, 948 (9th Cir. 1983) (internal quotation marks omitted) ("[A]bsolute precision in drafting laws is not demanded, particularly where the law does not impose a criminal penalty.").

First Resort's vagueness challenge fails to take into account two important things. First, First Resort fails to even address the high burden of showing the

---

[11] The District Court's factual recitation in its summary judgment Order in this case states in error that the City's Rule 12(b)(6) motion to dismiss the vagueness claim was granted *without* leave to amend is in error. ER vol. I, 8-9.

Ordinance to be facially vague. As the Supreme Court recognized in *Hill v. Colorado*, "speculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid in the vast majority of its intended applications." 530 U.S. 703, 733 (2000) (internal quotations omitted).

Second, First Resort's vagueness challenge fails to take into context the Ordinance as a whole. "[V]agueness challenges will be rejected when it is clear what the ordinance as a whole prohibits[.]" *Human Life of Wash. Inc. v. Brumsickle*, 624 F.3d 990, 1021 (9th Cir. 2010). First Resort cannot simply point to terms in isolation as impermissibly vague: "[o]therwise imprecise terms may avoid vagueness problems when used in combination with terms that provide sufficient clarity." *Id.*

The Ordinance clearly states that its purpose is to prevent limited services pregnancy centers from engaging in "false and misleading advertising" regarding the nature of the counseling and services it provides or does not provide. S.F. Admin. Code § 93.2(6), (7), (8), (9), (11), and (12). It also states that advocacy and other non-advertising speech are not regulated. § 93.2(3) and (10). The Ordinance also requires the City Attorney to give notice and an opportunity to cure any false and misleading advertising before liability may attach. § 93.5(a). Given this context, First Resort's assertion that the Ordinance fails to provide notice as to what it prohibits lacks merit.

As courts have repeatedly determined, there is simply nothing vague about false advertising laws using similar terminology to the City's Ordinance. *See*, *e.g.*, *Ark. Hearing Instrument Dispenser Bd. v. Vance*, 197 S.W.3d 495 (Ark. 2004); *Ardt v. Illinois Dept. of Prof'l Regulation*, 607 N.E.2d 1226 (Ill. 1992); *Bedford Motors*, *Inc. v. Harris*, 714 P.2d 489 (Colo. 1986); *State v. Ralph Williams' N.W.*

*Chrysler Plymouth*, 553 P.2d 423 (Wash. 1976); *Carpets by Carload, Inc. v. Warren*, 368 F. Supp. 1075 (E.D. Wis. 1973). The Ordinance is also similar— though not identical—to the California false advertising law. *See* Cal. Bus. and Prof. Code section 17500 ("Section 17500"). The Ninth Circuit has never found this language vague or difficult to apply. *See, e.g.*, *Williams v. Gerber Prod. Co*., 552 F.3d 934, 938 (9th Cir. 2008); *Ariz. Cartridge Remanufacturers Ass'n, Inc. v. Lexmark Int'l, Inc*., 421 F.3d 981, 985-86 (9th Cir. 2005). Indeed, some of the very terms that First Resort claims have no clear meaning have been upheld by California's appellate courts against void for vagueness challenges. *See People v. Witzerman*, 29 Cal.App.3d 169, 179-80 (Cal. Ct. App. 1972).

To the extent First Resort bases its vagueness challenge on terms of the Ordinance that differ from California false advertising law,[12] none of these terms are impermissibly vague, especially when examined within the context of the entire Ordinance. Courts are, for example, readily able to construe the meaning of false and misleading "omissions," and have done so for a number of years in evaluating violations of the FTC Act, 15 U.S.C. § 45(a)(1) and (2), which may premise liability on a material omission. *See FTC v. Pantron I Corp*., 33 F.3d 1088, 1095 (9th Cir.1994). First Resort appears to confuse the fact that the Ordinance contains terms that might eventually require explication by a Court with those terms being unconstitutionally vague. Further, to the extent that any remaining uncertainty exists as to the scope of the Ordinance, any lack of notice is cured by the Ordinance's requirement that the City Attorney give notice and an opportunity to cure before filing suit. *See Mason v. Florida Bar*, 208 F.3d 952,

---

[12] While Defendants certainly do not concede that the two laws are identical, it is worth noting that First Resort's vagueness argument is inconsistent with its contention that the two laws are co-extensive. BOA at 45.

959 n.4 (11th Cir. 2000) (noting that availability of advisory opinion bolsters validity against vagueness challenge); *see also Arnett v. Kennedy*, 416 U.S. 134, 160 (1974).

## IV.   THE ORDINANCE IS NOT FACIALLY INVALID UNDER THE EQUAL PROTECTION CLAUSE

First Resort's Equal Protection cause of action rises or falls with its First Amendment cause of action. *See, e.g.*, *City of Renton v. Playtime Theatres*, 475 U.S. 41, 55 (1986); *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 54 (1983); *Dariano v. Morgan Hill Unified Sch. Dist.*, 767 F.3d 764, 780 (9th Cir. 2014) cert. denied sub nom. *Dariano ex rel. M.D. v. Morgan Hill Unified Sch. Dist.*, 135 S. Ct. 1700 (2015) ("Where plaintiffs allege violations of the Equal Protection Clause relating to expressive conduct, we employ 'essentially the same' analysis as we would in a case alleging only content or viewpoint discrimination under the First Amendment." (citing *Barr v. Lafon*, 538 F.3d 554, 575 (6th Cir.2008) (internal quotations omitted))).  That is, First Resort "can fare no better under the Equal Protection Clause than under the First Amendment itself."  *City of Renton*, *supra*, at 55 n.4.  Because the Ordinance does not unconstitutionally restrict First Resort's free speech rights, First Resort's challenge to the District Court's judgment on its Equal Protection cause of action necessarily fails.[13]

Even if the Ordinance were reviewed under the Equal Protection Clause, it would satisfy the applicable rational basis test.  *Heller v. Doe by Doe*, 509 U.S. 312, 319 (1993).  The Ordinance does not burden exercise of First Amendment

---

[13] First Resort's equal protection claim is limited to its pleadings, which alleged only an equal protection cause of action based on its freedom of speech. First Resort did not allege in its FAC an equal protection claim based either on freedom of religion or its right of "conscience," and cannot add such a claim on either summary judgment or appeal.  *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000).

rights or any other fundamental right. Indeed, one of the articulated goals of the Ordinance is to *protect* the exercise of a fundamental right. Nor does the Ordinance target a suspect class. This Court has declined to apply suspect classification based on a clinic's offered services, holding that abortion *providers* are not a suspect class. *See Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 545-547 (9th Cir. 2004). It follows that the LSPs at issue here—clinics that decline to provide or refer for abortions—are also are not a suspect class. Therefore, rational basis review is the appropriate test.

A law survives an Equal Protection challenge under rational basis review so long as there is a "rational relationship" between the classification "and some legitimate governmental purpose." *Heller*, 509 U.S. at 320. To show that a law violates the Equal Protection Clause under rational basis review, the law must be "so irrational or absurd on [its] face" that "it is clear [that it] can be motivated by nothing other than animus or prejudice against a group." *Tucson Woman's Clinic*, 379 F.3d at 543; *see also City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 448-49 (1985).

Here, the Ordinance furthers several legitimate governmental ends— preventing consumer deception, protecting reproductive health, and advancing the City's fiscal goals. The Ordinance itself sets forth plainly and succinctly the valid reason for distinguishing between LSPs and full-service providers. S.F. Admin Code § 93.2 (9). *Tucson Woman's Clinic* makes plain that even in the heated political context of the abortion debate, a categorization based on whether or not a facility offers abortion services is not an invidious one. 379 F.3d at 543. Where a clinic offers a full range of services, the consumer harms of false and misleading advertising may remain, but the threat to a woman's ability to access time-sensitive

and constitutionally protected medical care does not.  The Ordinance, therefore, survives Equal Protection scrutiny.

## V.   FIRST RESORT'S PURPORTED AS-APPLIED CHALLENGE IS BOTH WAIVED AND MOOT

### A.   First Resort Has Waived Any As-Applied Challenge To The Ordinance

First Resort's challenges are not "both . . . facial and as applied," as First Resort asserts them to be for the first time in its appellate brief. BOA at 14.  First Resort mischaracterizes its position throughout the case, ignores the District Court's correct description of the facial challenge on two occasions, and disregards the relief sought in the operative complaint.  In reality, First Resort only seeks to recast its facial challenges on appeal after failing below to meet the high bar required for a successful facial challenge.

First Resort has repeatedly and exclusively referred to its challenge as facial. In its briefing on summary judgment, First Resort *explicitly stated* that its challenge was facial. SER vol. I, 72 ("Although First Resort does bring a facial challenge, it is worth reiterating that there are only two non-abortion providers in San Francisco").  First Resort's arguments have also implied a facial challenge.  *Id.* at 8 ("First Resort has established that no circumstances exist under which the Ordinance could be validly applied in San Francisco").

The District Court also understood First Resort as bringing only a facial challenge. In its Order on the cross-motions for summary judgment, the District Court twice described First Resort's action as "a facial challenge." ER vol. I, 4, 10. Likewise, in assessing Defendants' motion to dismiss the initial complaint, the District Court compared facial and as applied challenges and concluded that First Resort's challenge was a "type of facial challenge."  ER vol. I, 34.

If the District Court mischaracterized the initial complaint as pleading a facial and not an as-applied challenge, First Resort should have amended its pleading to more explicitly plead the as-applied challenge. It did not do so; the paragraphs of the FAC cited in support of its "as applied" challenge, BOA at 14, are mostly identical to those in the initial complaint, with a minor addition to describe First Resort's standing. Nor did First Resort respond by explicitly arguing an as-applied challenge in its pleadings on the cross-motions for summary judgment. Likewise, it did not respond in its briefing below to the City's contention that First Resort had not made an as-applied challenge. SER vol. I, 32 (noting that "First Resort plainly does *not* bring an as-applied challenge"). First Resort has therefore waived its ability to bring an as-applied challenge to the Ordinance.

Finally, the remedies repeatedly sought by First Resort also signal that its challenge is solely facial. The "label" First Resort puts on its claim "is not what matters;" the relief sought is. *John Doe No. 1 v. Reed*, 561 U.S. 186, 194 (2010) ("*Doe v. Reed*"). "[T]he distinction between facial and as-applied challenges . . . goes to the breadth of the remedy employed by the Court, not what must be pleaded in a complaint." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331 (2010).

The FAC seeks broad relief against *any* enforcement of the Ordinance, and does not request any relief that would be limited to First Resort. The FAC's Prayer for Relief requests that the court "issue a declaratory judgment that the Ordinance is *void and of no force and effect*," and also issue an injunction against Respondents "enjoining them from enforcing or directing the enforcement of the request *in any respect*...." ER vol. II, 277 (emphasis added). Because First Resort

requests only relief that reaches beyond its own particular circumstances, its challenges must be construed as facial.

**B.      Any As-Applied Challenge by First Resort Is Moot**

Even if First Resort has not waived its ability to bring an as-applied challenge, it has mooted its ability to bring such a challenge because it appears that First Resort no longer operates an LSP in San Francisco.  *See supra* Section I. Although it appears that these facts developed after the close of discovery in the District Court, Appellees apprise the Court of these changes because they render moot First Resort's as-applied challenge. In these situations, "[i]t is the duty of counsel to bring to the federal [appellate] tribunal's attention, *without delay*, facts that may raise a question of mootness." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.23 (1997)) (internal quotation marks omitted); see also *Lowry v. Barnhart*, 329 F.3d 1019, 1024 (9th Cir. 2003).  Appellees request that the Court consider the effects of First Resort's apparent retreat from clinical practice on any as-applied challenge before this Court.

It is not enough that a case presents a live controversy when it is filed—an actual controversy must exist at *all* stages of federal court proceedings. *Protectmarriage.com-Yes on 8 v. Bowen*, 752 F.3d 827, 834 (9th Cir. 2014) ("*Protectmarriage*"), *cert. denied sub nom. ProtectMarriage.com-Yes on 8 v. Padilla*, 135 S. Ct. 1523 (2015).  These principles apply when a party alleges both a facial and an as-applied challenge, but the facts in the record supporting an as-applied challenge are altered.  *Id.* at 841.

This is precisely the situation that First Resort is in.  If First Resort's former business has ceased or shifted to Third Box, Appellant lacks a concrete interest in any as-applied claim, since it appears that the City can no longer enforce its Ordinance against First Resort.  If First Resort is no longer subject to the

application of the Ordinance, the Court cannot offer First Resort relief on any as-applied challenge.[14]

## VI. THE ORDINANCE IS NOT PREEMPTED BY STATE FALSE ADVERTISING LAW

First Resort appeals the District Court's rejection of its argument that the Ordinance is preempted because it is duplicative of California Business and Professions Code 17500 et seq. ("Section 17500"). First Resort's duplication preemption claim fails for two reasons. The Ordinance is neither a criminal law nor coextensive with Section 17500. Further, in contending that the Ordinance is preempted, First Resort: 1) ignores the presumption against preemption; 2) fails to mention, much less distinguish, a decision by this Court directly in conflict with its own arguments; and 3) ignores substantive differences between the Ordinance and Section 17500 that render the former non-duplicative.

California law contains a strong presumption against preemption—that is, courts presume that local regulation is not preempted by state statute. *Big Creek Lumber Co. v. Cnty. of Santa Cruz*, 38 Cal.4th 1139 (2006); *Garcia v. Four Points Sheraton LAX*, 188 Cal.App.4th 364 (2010). First Resort bears the burden of demonstrating preemption. First Resort completely fails to address this presumption in its briefing, which is unsurprising as it cannot meet this heavy burden here.

---

[14] If First Resort requests that Third Box be substituted for itself in this appeal, Defendants oppose any such request. Although it appears that the two entities share considerable overlap in both business plan and management, Third Box is separately incorporated and appears to have a different website, branding, and advertising strategy.

State law preempts local law only "if the local law 'duplicates, contradicts, or enters an area fully occupied by general law, either expressly or by legislative implication.'" *Fireman's Fund Ins. Co. v. City of Lodi*, 302 F.3d 928, 941 (9th Cir. 2002) ("*Fireman's Fund*"); *see also Conejo Wellness Cntr., Inc. v. City of Agoura Hills*, 214 Cal.App.4th 1534, 1552 (2013). Of these separate bases for preemption, only duplication preemption is at issue here.[15]

First Resort's attempt to apply duplication preemption to void the Ordinance fails two separate reasons, either of which is sufficient to find Ordinance not preempted: 1) duplication preemption alone cannot void a civil ordinance; and 2) the Ordinance is not coextensive with Section 17500.

### A. This Court Has Held That The Rationale Behind Duplication Preemption Does Not Apply To Civil Laws

As this Court has explained, the rationale behind duplication preemption sounds clearly in criminal—not civil—law. *Fireman's Fund*, 302 F.3d at 956. Because the doctrine of double jeopardy underpins duplication preemption, its application in the civil context makes little sense:

> California courts have largely confined the duplication prong of the state preemption test to penal ordinances. *Baldwin v. County of Tehama*, 31 Cal.App.4th 166, 36 Cal.Rptr.2d 886, 894 (1994). The "reason that a conflict with the general laws under article XI, section 7 of the state Constitution is said to exist where an ordinance duplicates state law is that a conviction under the ordinance will operate to bar prosecution under state law for the same offense." *Cohen v. Bd. of Supervisors*, 40 Cal.3d 277, 219 Cal.Rptr. 467, 475 n.12. (1985).

*Id. Fireman's Fund* is directly on point, and is cited extensively in the Order on appeal in this case. ER vol. I, 20. Yet First Resort not only fails to distinguish that

---

[15] Although First Resort cites implied field preemption cases in support of this cause of action, it has waived any ability to make an implied field preemption argument in its appeal. ER vol. I, 42-43.

decision but entirely ignores its existence. For First Resort to prevail, this Court would have to reverse its prior ruling in *Fireman's Fund*, and become *the first* court to invalidate a civil ordinance based solely on California duplication preemption.

To be sure, California courts have invalidated penal ordinances that duplicate state law.[16] Courts have also invalidated a handful of civil ordinances in decisions that mention duplication preemption—yet each decision relies primarily on other theories for finding preemption. As the District Court in this case recognized, duplication preemption was mentioned in these cases only in dicta or in the context of a broader field preemption analysis not before this Court.[17] It is both doctrinally incoherent and in direct conflict with this Court's precedent to argue, as First Resort does, that a civil ordinance may be invalidated on the basis of California duplication preemption alone.

First Resort asserts that the enforcement regime established by the Ordinance creates the same "jurisdictional conflict that duplication preemption was originally intended to prevent." BOA at 45. This is inaccurate. It is concern over the possibility of double jeopardy, not some general jurisdictional anxiety, which has long animated California's duplication preemption doctrine. As noted, the California constitution empowers local governments to enact ordinances "not in conflict with general laws." Cal. Const. art. XI § 7. Just decades after this

---

[16] *See, e.g.*, *Cohen v. Board of Supervisors*, 40 Cal. 3d 277 (1985); *In re Portnoy*, 21 Cal. 2d 237 (1942); *Ex parte Mingo*, 190 Cal. 769 (1923); *In re Sic*, 73 Cal. 142 (1887); *People v. Mosely*, 140 Cal. App. 2d Supp. 871, 872 (Cal. App. Dep't Super. Ct. 1956); *People v. Papayanis*, 101 Cal. App. 2d Supp. 918, 921-23 (Cal. App. Dep't Super. Ct. 1950).

[17] *See, e.g.*, *Sequoia Park Associates v. Cnty. of Sonoma*, 176 Cal. App. 4th 1270 (2009); *Mobilepark West Homeowners Ass'n v. Escondido Mobilepark West*, 35 Cal. App. 4th 32 (1995); *Korean Am. Legal Advocacy Found. v. City of Los Angeles*, 23 Cal. App. 4th 376 (1994); *Chavez v. Sargent*, 52 Cal. 2d 162 (1959); *and Pipoly v. Benson*, 20 Cal.2d 366 (1942).

provision was adopted, the California Supreme Court explained that this "conflict" referenced in Article XI arises where a local ordinance and state law both allow for *criminal* punishment of the same act. *In re Sic*, 73 Cal. 142, 148-49 (1887).

This double jeopardy rationale persists today to constrain the application of California duplication preemption to the criminal context. *See, e.g., People v. Orozco*, 266 Cal.App.2d 507, 511 n.1 (1968); *Cohen v. Board of Supervisors*, 40 Cal.3d 277, 292, n. 12 (1985) (quoting *People v. Orozco*); *Baldwin v. County of Tehama*, 31 Cal. App. 4th 166, 180 (1994) (a duplication preemption claim "fails categorically at the outset" where it does not duplicate state criminal law.)

Tellingly, the primary cases First Resort relies on deal with penal ordinances or are not about duplication preemption. First Resort claims that the ordinance in *In re Portnoy* was duplicative because its text "was found in state law." BOA at 45. Yet *In re Portnoy* invalidated a local ordinance because it "purport[ed] to prohibit acts which [we]re already made *criminal* by the Penal Code." 21 Cal.2d 237, 240 (1942) (emphasis added). First Resort's reliance on *Pipoly v. Benson* and *Sequoia Park Associates v. County of Sonoma* ("*Sequoia Park*") is similarly misplaced. Appellant cites these cases as authority for its claim that enforcement of the Ordinance is barred by duplication preemption. BOA 45. Yet, *Pipoly* applied a field preemption analysis inapposite here. 20 Cal. 2d 366, 374 (1942); *see also In re Portnoy* at 239-40 (identifying *Pipoly* as belonging to "the class of cases in which the Legislature has indicated its intent to occupy the field fully to the exclusion of any local regulation"). And *Sequoia Park* invalidated an ordinance pursuant to an implied preemption test abandoned by First Resort early in this case.

Finally, First Resort's ill-defined "jurisdictional conflict" argument, BOA at 45, should also fail for the straightforward reason that California's false advertising law expressly contemplates both overlapping regulations by other entities and

municipal enforcement of the state law. Cal. Bus. & Prof. Code §§ 17500.1 and 17535.  The Ordinance can hardly be said to create a jurisdictional conflict where the state both envisions and explicitly authorizes multiple enforcement.

**B.    The Ordinance Does Not Duplicate State False Advertising Law**

Local legislation is only "'duplicative' of general law when it is coextensive therewith." *Big Creek Lumber* at 1150; *Sherwin-Williams Co. v. City of Los Angeles*, 4 Cal.4th 893, 897 (1993).  In *Fireman's Fund*, this Court considered a local hazardous waste ordinance "modeled on" a state law that "treat[ed] the same subject" as the state law.  *Id.* at 937, 956.  Finding the ordinance was nonetheless "hardly co-extensive" with state law, the Court found "no preemption by duplication."  *Id.* at 956.  *Fireman's Fund* illustrates that duplication preemption applies to local ordinances that are genuinely coextensive with state law, and not to those merely similar to or even modeled on state law, as First Resort suggests.

The Ordinance at issue here governs a subset of false and misleading advertising the City believes is particularly harmful.  The Ordinance is different from Section 17500 in a number of material respects. In the first instance, it applies to the false advertising of "pregnancy-related services" by "any limited services pregnancy center," S.F. Admin. Code § 93.4, while Section 17500 governs "any person, firm, corporation or association, or any employee thereof" acting with the broader intent to dispose of property, to perform services, or to induce the public to enter into related obligations. Cal. Bus. & Prof. Code § 17500.  Further, the Ordinance differs from Section 17500 with respect to the conduct it prohibits, its enforcement scheme, and the remedies it makes available.

The Ordinance does not, as First Resort alleges, "proscribe precisely the same acts as Section 17500." ER vol. I, 22 (quotation marks omitted).  The

Ordinance explicitly disallows the knowing dissemination of untrue or misleading statements by LSPs "whether by statement or omission." S.F. Admin. Code § 93.4 (a), but the text of Section 17500 says nothing to suggest that omissions constitute unlawful statements. Similarly, the Ordinance regulates services "expressly or impliedly offered," *id.* § 93.4(b), while Section 17500 is silent with respect to implied offers. Perhaps most importantly, the Ordinance makes it explicitly unlawful to make statements with the intent not to "perform" services as advertised*, id.* § 93.4, while Section 17500 targets untrue or misleading statements made with the intent not to "sell" services as advertised. Cal. Bus. & Prof. Code § 17500.

In recognition of the time-sensitive nature of violations, *see* S.F. Admin. Code § 93.2(4), the Ordinance imposes a mandatory enforcement framework incentivizing early resolution through a notice requirement, affording violators a ten-day opportunity to cure unlawful conduct before litigation. S.F. Admin. Code § 93.5(a). Section 17500 contains no such provision.

Finally, the Ordinance contains different remedies than Section 17500, tailored to its specific scope and purpose. It proscribes a narrower range of civil penalties than does Section 17500, of "not more than five hundred dollars ($500) per violation" S.F. Admin. Code § 93.5(c) as opposed to "a civil penalty not to exceed two thousand five hundred dollars ($2,500) for each violation" under Section 17500. Cal. Bus. & Prof. Code § 17536. The Ordinance does not offer the restitutionary relief available under Section 17500. *Id.* Instead, the Ordinance authorizes injunctive relief designed "to remedy the adverse effects of the false, misleading, or deceptive advertising on women seeking pregnancy-related services." S.F. Admin. Code § 93.5(b). These remedies include "corrective advertising," notice posting, and other narrowly tailored affirmative relief, where

Section 17500 limits injunctive relief to the prevention of future violations. Cal. Bus. & Prof. Code § 17536.

These material differences establish that the Ordinance is not coextensive with Section 17500, and should not be invalidated as duplicative.

## CONCLUSION

For the forgoing reasons, the Court should affirm the decision of the District Court in its entirety. The District Court correctly concluded that the Ordinance is facially valid under the federal Constitution's guarantee of free speech and equal protection rights, is not void for vagueness, and is not preempted by California law.

Dated: November 17, 2015

Respectfully submitted,
DENNIS J. HERRERA
City Attorney
YVONNE R. MERÉ
Chief of Complex and Affirmative Litigation
ERIN BERNSTEIN
MOLLIE LEE


By: _____*/s/ Erin Bernstein*_____
ERIN BERNSTEIN
Deputy City Attorney
Attorneys for Defendants-Appellees
CITY AND COUNTY OF SAN FRANCISCO

## STATEMENT OF RELATED CASES

There are no related cases pending in this Court.

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief has been prepared using proportionately double-spaced 14 point Times New Roman typeface. According to the "Word Count" feature in my Microsoft Word for Windows software, this brief contains 13,879 words up to and including the signature lines that follow the brief's conclusion.

I declare under penalty of perjury that this Certificate of Compliance is true and correct and that this declaration was executed on November 17, 2015.

DENNIS J. HERRERA
City Attorney
DENNIS J. HERRERA
City Attorney
YVONNE R. MERÉ
Chief of Complex and Affirmative Litigation
ERIN BERNSTEIN
MATTHEW GOLDBERG

By: _____*/s/ Erin Bernstein*_____
ERIN BERNSTEIN
Deputy City Attorney
Attorneys for Defendants-Appellees
CITY AND COUNTY OF SAN FRANCISCO

## <u>CERTIFICATE OF SERVICE</u>

I, MARTINA HASSETT, hereby certify that I electronically filed the following document with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECFsystem on November 17, 2015.

### APPELLEES' BRIEF

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Executed November 17, 2015, at San Francisco, California.



       */s/ Martina Hassett*
       MARTINA HASSETT