**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| FIRST RESORT, INC., *Plaintiff-Appellant*, v. DENNIS J. HERRERA, in his official capacity as City Attorney of the City of San Francisco; BOARD OF SUPERVISORS OF THE CITY & COUNTY OF SAN FRANCISCO; CITY AND COUNTY OF SAN FRANCISCO, *Defendants-Appellees.* | No. 15-15434 D.C. No. 4:11-cv-05534-SBA OPINION |

Appeal from the United States District Court
for the Northern District of California
Saundra B. Armstrong, District Judge, Presiding

Argued and Submitted November 15, 2016
San Francisco, California

Filed June 27, 2017

Before: Dorothy W. Nelson, A. Wallace Tashima,
and John B. Owens, Circuit Judges.

Opinion by Judge D.W. Nelson;
Concurrence by Judge Tashima

# SUMMARY[*]

## Constitutional Law

The panel affirmed the district court, and held that San Francisco's Pregnancy Information Disclosure and Protection Ordinance (the "Ordinance") was constitutional and not preempted by state law.

The Ordinance is a law designed to protect indigent women facing unexpected pregnancies from the harms posed by false or misleading advertising by limited services pregnancy centers ("LSPC"). First Resort, Inc., an LSPC, challenged the constitutionality of the Ordinance.

The panel held that the Ordinance is facially valid because it regulates only unprotected false or misleading commercial speech – a category of speech afforded no constitutional protection; and the Ordinance is not unconstitutionally vague.

The panel held that the Ordinance was valid as applied to First Resort. Specifically, the panel held that: the Ordinance does not regulate First Resort's protected speech; First Resort's commercial speech is not inextricably intertwined with its protected speech; and the Ordinance does not discriminate based on the particular opinion, viewpoint, or ideology of First Resort or other LSPCs.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that the Ordinance does not violate the Equal Protection Clause of the Fourteenth Amendment. The panel held that the Ordinance regulates only unprotected commercial speech, and because the Ordinance does not unconstitutionally burden the fundamental right to free speech, the Ordinance is subject only to rational basis review. The panel concluded that the Ordinance was rationally related to legitimate government interests.

The panel held that the Ordinance was not preempted by California's false advertising law, Cal. Bus. & Prof. Code § 17500. The panel declined to apply duplication preemption to invalidate the Ordinance because its enforcement did not raise double-jeopardy concerns, and First Resort had not demonstrated that it duplicated state law.

Judge Tashima concurred in all of the panel's opinion, except for Part 4, as to which he remained *dubitante* (doubtful about the legal proposition but hesitant to declare it wrong). Judge Tashima was unpersuaded that the Ordinance was not preempted by California's false advertising law, and he would certify that question to the California Supreme Court.

## COUNSEL

Stephen A. Tuggy (argued) and Kelly S. Biggins, Locke Lord LLP, Los Angeles, California, for Plaintiff-Appellant.

Erin B. Bernstein (argued) and Matthew Goldberg, Deputy City Attorneys; Yvonne R. Meré, Chief of Complex and Affirmative Litigation; Dennis J. Herrera, City Attorney; Office of the City Attorney, San Francisco, California; for Defendants-Appellees.

Jonathan M. Eisenberg, Deputy Attorney General; Mark R. Beckington, Supervising Deputy Attorney General; Douglas J. Woods, Senior Assistant Attorney General; Kathleen A. Kenealy, Chief Assistant Attorney General; Office of the Attorney General, Los Angeles, California; for Amicus Curiae Attorney General of California.

Priscilla Joyce Smith, Yale Law School, Brooklyn, New York, for Amici Curiae Information Society Project at Yale Law School and First Amendment Scholars.

Paula M. Mitchell, Attorney; Lindsay N. Burton, Law School Participant; Los Angeles, California; for Amici Curiae NARAL Pro-Choice California, California Religious Coalition for Reproductive Choice, California Women Lawyers, and Women Lawyers Association of Los Angeles.

---

## OPINION

NELSON, Senior Circuit Judge:

First Resort, Inc. ("First Resort") challenges the constitutionality of San Francisco's Pregnancy Information Disclosure and Protection Ordinance ("the Ordinance"), a law designed to protect indigent women facing unexpected pregnancies from the harms posed by false or misleading advertising by limited services pregnancy centers ("LSPCs"). S.F. Admin Code, ch. 93 §§ 93.1–93.5. The district court granted in part Appellees' (collectively, "the City") motion to dismiss, denied First Resort's motion for summary judgment, and granted Appellees' cross-motion for summary judgment. First Resort now appeals those decisions. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm

the district court and hold the Ordinance is constitutional and not preempted by state law.

## BACKGROUND

### 1. First Resort

Until 2014, First Resort, an LSPC, operated a state-licensed community medical clinic and advertised its services in San Francisco under the name "First Resort." Since 2014, First Resort has operated its clinic under the names "Third Box" and "Support Circle." As a non-profit corporation, First Resort provides free pregnancy-related services, including pregnancy testing, ultrasounds, and counseling. First Resort's goal is "to build an abortion-free world," and therefore it does not provide abortions or emergency contraception to its patients, nor does it refer its patients to other facilities for such services.

First Resort's target clients are women who are unsure how to proceed with unplanned pregnancies, including women considering abortion. While operating its website under the name "First Resort," the clinic utilized paid-for online advertising services, such as Google Adwords, to reach its intended audience. Upon searching for certain keywords such as "San Francisco," "abortion," and "emergency contraception," internet users were directed to First Resort's website. First Resort uses its online advertising to compete with abortion providers for viewers' attention.

Although First Resort has a clear anti-abortion agenda, the clinic advertised itself online as an unbiased and neutral organization that provided "abortion information, resources, and compassionate support for women" with "unintended

pregnancies" who are "considering abortion." The website further stated that First Resort "equip[s] [women] with the resources [they] need to make a well-informed decision about [their] options," and offered information about abortion procedures and costs. Notably, the website and advertising materials did not mention First Resort's anti-abortion stance or that it did not provide referrals for abortions.

## 2.  False and Misleading Advertising by Clinics

False and misleading advertising by clinics that do not provide abortions, emergency contraception, or referrals to providers of such services has become a problem of national importance. This issue has been the subject of a congressional report and proposed federal legislation. *See* Minority Staff of H. Comm. on Gov't Reform, Special Investigations Div., *False & Misleading Health Information Provided by Federally Funded Pregnancy Resource Centers* (July 2006) (the "*Waxman Report*"); Stop Deceptive Advertising for Women's Services Act of 2013, S. 981, 113th Cong. (2013) ("A Bill [t]o direct the Federal Trade Commission to prescribe rules prohibiting deceptive advertising of abortion services . . . ."). The congressional report found that certain pregnancy resource centers "frequently fail to provide medically accurate information" and that "the vast majority of pregnancy centers" contacted during the investigation misrepresented the medical consequences of abortion. *Waxman Report* at 14. The report further concluded that while "[t]his tactic may be effective in frightening pregnant teenagers and women and discouraging abortion[,]" it "denies [them] vital health information, prevents them from making an informed decision, and is not an accepted public health practice." *Id.*

Local governments around the country, including in San Francisco, have also sought to curtail the deceptive practices of pregnancy service centers.  On August 2, 2011, Supervisor Malia Cohen, a member of the Board of Supervisors of the City and County of San Francisco ("the Board"), introduced legislation aimed at preventing such deceptive practices. That same day, the City Attorney sent First Resort a letter expressing his "serious concerns" about First Resort's misleading advertisements and asking First Resort to "correct" its advertising "to clarify that the clinic does not offer or make referrals for abortion services."  This is the only such letter the City Attorney sent First Resort.

At an October 18, 2011 Board meeting, various supervisors commented on the proposed legislation. Supervisor Cohen stated, "I want to remind you the purpose and intent of this Ordinance is to protect consumers of pregnancy-related services by prohibiting [LSPCs] from knowingly disseminating false or misleading advertising information about the services they provide."  Supervisor Weiner said, "we are obviously balancing . . . constitutional rights here," noting that "we're all very conscious of the First Amendment," and that "this has been a narrowly drafted ordinance."  Disagreeing with his colleagues, Supervisor Elsbernd argued that "the proponents of this legislation [have] made clear that their target is . . . First Resort," and that "there has been no testimony, documentation, no affidavits of any woman, any service, someone seeking service who has been misled."

On October 25, 2011, the Board passed the Ordinance in a ten-to-one vote.  The Ordinance was signed into law on November 3, 2011, and took effect on December 4, 2011.

### 3.  The Ordinance

The Ordinance amended the San Francisco Administrative Code, adding Chapter 93, Sections 93.1 through 93.5, "to prohibit [LSPCs] from making false or misleading statements to the public about pregnancy-related services the centers offer or perform."  The Ordinance is divided into five sections: (1) "Title," (2) "Findings," (3) "Definitions," (4) "Violation," and (5) "Enforcement." *See generally* S.F. Admin. Code, ch. 93 §§ 93.1–93.5.

The "Findings" section explains the impetus for the Ordinance, stating that "[i]n recent years, clinics that seek to counsel clients against abortion"—often referred to as crisis pregnancy centers ("CPCs")—"have become common throughout California." *Id.* § 93.2(5).  Although some CPCs "openly acknowledge, in their advertising and their facilities, that they do not provide abortions or emergency contraception or refer clients to other providers of such service[,]" others "seek to mislead women contemplating abortion into believing that their facilities offer abortion services and unbiased counseling." *Id.* § 93.2(6).  "Because of the time-sensitive and constitutionally protected nature of the decision to terminate a pregnancy, false and misleading advertising by clinics that do not offer or refer clients for abortion or emergency contraception is of special concern to the City." *Id.* § 93.2(9).  This is because "[w]hen a woman is misled into believing that a clinic offers services that it does not in fact offer, she loses time crucial to the decision whether to terminate a pregnancy," and "may also lose the option to choose a particular procedure, or to terminate a pregnancy at all." *Id.*  The "Findings" section also emphasizes that the "City respects the right of [LSPCs] to counsel against abortions . . . and the City does not intend by

this Chapter to regulate, limit or curtail such advocacy." *Id.* § 93.2(10).

In addition, the "Findings" section notes the City's relevant financial concerns. In particular, the Ordinance explains that if women "who have chosen to terminate a pregnancy are misled and delayed by the false advertising of CPCs, the cost of providing more invasive and expensive options may fall upon the City health facilities, which provide the medical services of last resort for the City's indigent population." *Id.* § 93.2(11).

In the "Definitions" section, the Ordinance distinguishes between a "[p]regnancy services center" and an LSPC. *Id.* § 93.3(f)–(g). A "[p]regnancy services center" is defined as "a facility, licenced or otherwise . . . the primary purpose of which is to provide services to women who are or may be pregnant, that either (1) offers obstetric ultrasounds, obstetric sonograms or prenatal care to pregnant women, or (2) has the appearance of a medical facility." *Id.* § 93.3(g). An LSPC, on the other hand, is "a pregnancy services center, as defined in subsection (g), that does not directly provide or provide referrals to clients for the following services: (1) abortions; or (2) emergency contraception." *Id.* § 93.3(f). As explained below, the prohibition on false advertising set forth in the Ordinance only applies to LSPCs. *Id.* § 93.4.

The "Violation" section of the Ordinance provides:

> (a) *It is unlawful for any [LSPC], with intent directly or indirectly to perform pregnancy-related services* (professional or otherwise), *to make or disseminate* or cause to be made or disseminated before the public in the City, or

to make or disseminate or cause to be made or
disseminated from the City before the public
anywhere, *in any newspaper or other
publication, or any advertising device* or in
any other manner or means whatever,
including over the Internet, *any statement,
concerning those services*, professional or
otherwise, or concerning any circumstance or
matter of fact connected with the proposed
performance or disposition thereof, *which is
untrue or misleading, whether by statement or
omission*, that the [LSPC] knows or which by
the exercise of reasonable care should know
to be untrue or misleading.

(b) It is unlawful for any [LSPC], with intent
directly or indirectly to perform pregnancy-
related services (professional or otherwise), to
make or disseminate or cause to be so made or
disseminated any such statement identified in
subsection (a) as part of a plan or scheme with
the intent not to perform the services
expressly or impliedly offered, as advertised.

*Id.* (emphasis added).

Finally, as set forth in the "Enforcement" section, "[t]he
City Attorney may enforce" the Ordinance through a civil
action. *Id.* § 93.5(a). Before filing an action, however, the
City Attorney must provide the LSPC with written notice of
the violation and indicate that the LSPC has ten days "in
which to cure the false, misleading, or deceptive advertising."
*Id.* "If the [LSPC] has not responded to the written notice
within ten (10) days, or refuses to cure the false, misleading,

or deceptive advertising within that period," the City Attorney may file suit against the LSPC for injunctive relief. *Id.* § 93.5(a)–(b). Further, the Ordinance provides that, "[u]pon a finding by a court . . . that [an LSPC] has violated Section 93.4 . . . , the City shall be entitled to recover civil penalties from each and every party responsible for the violation of not less than fifty dollars ($50) and not more than five hundred dollars ($500) per violation." *Id.* § 93.5(c).

## 4. Procedural History

On November 16, 2011, First Resort brought suit against the City in the United States District Court for the Northern District of California, alleging freedom of expression, equal protection, void for vagueness, and state law preemption claims. The City moved to dismiss all claims except the freedom of expression claim. The district court denied the motion as to the equal protection claim and granted the motion with leave to amend as to the void for vagueness and preemption claims.

First Resort then filed its First Amended Complaint ("FAC") on October 11, 2012, re-alleging all claims from the original complaint except the void for vagueness claim. On March 11, 2013, the district court denied the City's new motion to dismiss the preemption claim. After the close of discovery, First Resort and the City filed cross-motions for summary judgment.

Granting summary judgment in favor of the City, the district court construed First Resort's freedom of speech claim as a facial challenge and held that the Ordinance only regulates unprotected false and misleading commercial speech and does not violate the First Amendment "in every

conceivable application." *First Resort, Inc. v. Herrera*, 80 F. Supp. 3d 1043, 1049 (N.D. Cal. 2015) (citation omitted). The district court further held that its "determination that the Ordinance does not violate the First Amendment forecloses First Resort's claim under the Equal Protection Clause," and that because enforcement of the Ordinance "does not interfere or conflict with an enforcement action" under Section 17500 of the California Business and Professions Code, the Ordinance is not preempted by state law. *Id.* at 1054, 1057.

First Resort timely appealed, arguing that the Ordinance is an invalid content-based regulation of protected speech, is void for vagueness, impermissibly engages in viewpoint discrimination, violates the Equal Protection Clause of the Fourteenth Amendment, and is preempted by state law.

## STANDARD OF REVIEW

We review de novo the district court's granting of a motion to dismiss. *Coal. to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1133 (9th Cir. 2012). We also review de novo the district court's grant or denial of summary judgment, and "determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Wallis v. Princess Cruises, Inc.*, 306 F.3d 827, 832 (9th Cir. 2002).

## DISCUSSION

### 1.  The Ordinance Is Facially Valid.

"An ordinance may be facially unconstitutional in one of two ways: 'either [ ] it is unconstitutional in every

conceivable application, or [ ] it seeks to prohibit such a broad range of protected conduct that it is unconstitutionally overbroad.'" *Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998) (quoting *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 796 (1984)). First Resort appears to challenge the Ordinance on both grounds. We conclude the Ordinance is facially valid because it regulates only unprotected false or misleading commercial speech and is not unconstitutionally vague.

### a. The Ordinance Only Regulates Unprotected Commercial Speech.

Because the type of speech subject to regulation by the Ordinance is a threshold issue, we must first determine whether the Ordinance only regulates false or misleading commercial speech. This question lies at the heart of the dispute, because while commercial speech is generally subject to intermediate scrutiny, the Constitution affords no protection to false or misleading commercial speech. *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 563 (1980) ("[T]here can be no constitutional objection to the suppression of commercial messages that do not accurately inform the public about lawful activity. The government may ban forms of communication more likely to deceive the public than to inform it . . . .") (internal citations omitted). First Resort argues that the Ordinance regulates all advertising, not only false or misleading advertising, and that the Ordinance is subject to heightened scrutiny because it regulates only non-commercial speech. We disagree.

First, the argument that the Ordinance regulates *all* advertising is unavailing. The Ordinance clearly makes "unlawful . . . any statement . . . which is untrue or

misleading" concerning services provided by LSPCs.  S.F. Admin. Code § 93.4(a).  Because the Ordinance plainly regulates only false or misleading speech, the central issue therefore is whether the regulated speech should be characterized as commercial.

As we have previously explained, "[c]ommercial speech is 'defined as speech that does no more than propose a commercial transaction.'"  *Hunt v. City of L.A.*, 638 F.3d 703, 715 (9th Cir. 2011) (quoting *United States v. United Foods, Inc.*, 533 U.S. 405, 409 (2001)); *see also Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 473–74 (1989) (stating the commercial transaction test is "the test for identifying commercial speech").  Our commercial speech "analysis is fact-driven, due to the inherent 'difficulty of drawing bright lines that will clearly cabin commercial speech in a distinct category.'"  *Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Balt.*, 721 F.3d 264, 284 (4th Cir. 2013) (quoting *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 419 (1993)).  Under *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60 (1983), "[w]here the facts present a close question, 'strong support' that the speech should be characterized as commercial speech is found where the speech is an advertisement, the speech refers to a particular product, and the speaker has an economic motivation."  *Hunt*, 638 F.3d at 715 (quoting *Bolger*, 463 U.S. at 66–67 and describing the *Bolger* test).  However, while "[t]he combination of *all* these characteristics . . . provides strong support for the . . . conclusion that [regulated speech is] properly characterized as commercial speech," *Bolger*, 463 U.S. at 67, each characteristic need not "necessarily be present in order for speech to be commercial," *id.* at 67 n.14.

This case is not the first time we have addressed the commercial speech doctrine in the context of medical service providers. In *American Academy of Pain Management v. Joseph*, 353 F.3d 1099 (9th Cir. 2004), we held that advertisements for paid medical services constituted commercial speech under the *Bolger* test. *Id.* at 1106. There, a non-profit organization and two of its member doctors challenged a provision of a California state law prohibiting doctors from advertising they were "board certified" unless the certifying board satisfied certain requirements. *Id.* at 1103–05. Holding that the state law regulated only commercial speech under *Bolger*, we explained: "The statute . . . identifies that the object of its regulation is 'advertising.' The advertising regulated relates to a specific product, medical services. Finally, the advertiser has an economic motive for engaging in this kind of speech, which is to solicit a patient base." *Id.* at 1106.

As in that case, the Ordinance states that its purpose is to regulate advertising related to a similar product: limited medical services offered by LSPCs. *See* S.F. Admin. Code § 93.2(12) ("[T]he City has determined that there exists a need to regulate false and misleading advertising by pregnancy clinics offering limited services."); *id.* §§ 93.3(f)–(g), 93.4(a). Further, the regulated LSPCs have at least one similar economic motive for engaging in false advertising: to solicit a patient base.

First Resort attempts to distinguish *American Academy* on the grounds that the patients in that case were paying clients who provided a monetary—and therefore economic— motivation for doctors to advertise. Thus, according to First Resort, LSPCs do not have a similar economic motive to

solicit patients because they do not necessarily receive payments from patients for services rendered.

We decline to limit *American Academy*'s holding to circumstances where clients pay for services. Here, the solicitation of a non-paying client base directly relates to an LSPC's ability to fundraise and, in turn, to buy more advertisements. Indeed, as explained in the Joint Statement of Undisputed Facts submitted in support of the parties' cross-motions for summary judgment, "First Resort's employees are encouraged to share client stories because they are useful in fundraising," and "[a] majority of First Resort's fundraising communications reference the benefit of its services to clients and often include client stories." Furthermore, at least in the case of First Resort, successful advertising directly affects employee compensation, as "[m]embers of First Resort's senior management team are eligible to receive bonuses based on criteria which may include . . . the number of new clients." Because LSPCs utilize advertising to maintain a patient base, which in turn can generate income, we conclude that LSPCs have an economic motivation for advertising their services.

"In any event, the potential commercial nature of speech does not hinge solely on whether the [LSPCs have] an economic motive, as even *Bolger* does not preclude classification of speech as commercial in the absence of the speaker's economic motivation." *Greater Baltimore*, 721 F.3d at 285–86. Thus, regardless of whether LSPCs have an economic motivation in advertising, their regulated speech can still be classified as commercial.

We find the reasoning in *Fargo Women's Health Org., Inc. v. Larson*, 381 N.W.2d 176 (N.D.), *cert. denied*, 476 U.S.

1108 (1986), persuasive.  In that case, the Supreme Court of North Dakota, addressing a factually similar case, upheld a preliminary injunction preventing a "pro-life" pregnancy clinic from engaging in "false and deceptive advertising and related activity [that] misleads persons into believing that abortions are conducted at the clinic with the intent of deceptively luring those persons to the clinic to unwittingly receive anti-abortion propaganda." *Id.* at 177, 179.  As in this case, the pro-life clinic argued that its communications constituted non-commercial speech "because no financial charges [were] assessed against persons receiving services." *Id.* at 180.  However, the court did not find that the lack of payment for services was dispositive to the commercial speech inquiry.  Instead, the court explained that, "[m]ore importantly, the Help Clinic's advertisements are placed in a commercial context and are directed at the providing of services rather than toward an exchange of ideas." *Id.* at 181. The court thus concluded that, "[i]n effect, the Help Clinic's advertisements constitute promotional advertising of services through which patronage of the clinic is solicited, and in that respect constitute classic examples of commercial speech." *Id.*

Here, as in *Larson*, the Ordinance is directed at advertisements related to the provision of certain medical services, not the exchange of ideas; the City did not attempt to ban advertisements related to constitutionally protected pro-life advocacy.  *See* S.F. Admin. Code § 93.2(10) ("The City respects the rights of [LSPCs] to counsel against abortions . . . and the City does not intend . . . to regulate, limit or curtail such advocacy."); *id.* § 93.2(12).  Instead, the Ordinance only regulates the dissemination of false or misleading statements regarding the pregnancy-related services an LSPC offers in a marketplace for those services.

18        FIRST RESORT V. HERRERA

*Id.* § 93.4(a). Furthermore, we note that the evidence in the record suggests First Resort views itself as advertising and participating in a competitive marketplace for commercially valuable services. In the Joint Statement of Undisputed Facts, First Resort admits that it "views its online advertising as competing with that of abortion providers for the attention of online viewers," and that "[t]he medical services offered by First Resort, such as pregnancy testing, ultrasounds, and nursing consultations have monetary value."

Because the Ordinance regulates advertising designed to attract a patient base in a competitive marketplace for commercially valuable services, we hold that the Ordinance regulates "classic examples of commercial speech." *Larson*, 381 N.W.2d at 181. Accordingly, as the Ordinance only regulates false or misleading commercial speech—a category of speech afforded no constitutional protection—First Resort's first facial challenge fails.

### b. The Ordinance Is Not Void for Vagueness.

First Resort also argues the Ordinance is facially invalid because it is unconstitutionally vague. However, we conclude First Resort has waived this void for vagueness challenge. In its original complaint, First Resort's second claim for relief was that the Ordinance was unconstitutionally vague. The district court dismissed this claim with leave to amend. In its FAC, First Resort did not replead the claim, effectively abandoning it. *See Lacey v. Maricopa Cty.*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc) ("For claims dismissed with prejudice and without leave to amend, we will not require that they be repled in a subsequent amended complaint to preserve them for appeal. But for any claims voluntarily dismissed, we will consider those claims to be

waived if not repled."); *see also Chubb Custom Ins. Co. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 973 n.14 (9th Cir. 2013).[1] Moreover, even if we were to conclude First Resort had not waived its void for vagueness challenge, the challenge nonetheless fails on the merits.

A law is unconstitutionally vague if it does not "provide a reasonable opportunity to know what conduct is prohibited, or is so indefinite as to allow arbitrary and discriminatory enforcement." *Human Life of Wash. Inc. v. Brumsickle*, 624 F.3d 990, 1019 (9th Cir. 2010) (citation and internal quotation marks omitted); *see also Roberts v. U.S. Jaycees*, 468 U.S. 609, 629 (1984). First Resort has not satisfied either of these grounds.

First, we may reject a vagueness challenge when it is "clear what the ordinance as a whole prohibits." *Human Life of Wash.*, 624 F.3d at 1021 (citation and internal quotation marks omitted). Further, "otherwise imprecise terms may avoid vagueness problems when used in combination with terms that provide sufficient clarity." *Id.* (citation and internal quotation marks omitted). In arguing that a person of ordinary intelligence cannot possibly know what speech is regulated or who might be punished by the Ordinance's penalty provisions, First Resort fails to view the specific

---

[1] We find unpersuasive First Resort's argument that it "reserved its claim by continuing to allege [in its FAC] the Ordinance was vague and therefore unconstitutional, but without asserting it as a claim separate from its free speech claim." Contrary to First Resort's suggestion, it does not appear First Resort continued to assert a void for vagueness claim. Although First Resort moved for summary judgment on all of the other claims pleaded in the FAC, it did not even reference its void for vagueness claim in that motion.

language it challenges in the context of the Ordinance as a whole.

As the district court noted, the Ordinance states in the "Findings" section "that its purpose is to prevent [LSPCs] from engaging in 'false and misleading advertising' regarding the nature of the counseling and services it provides or does not provide." *First Resort, Inc. v. Herrera*, No. 11-5534, 2012 WL 4497799, at *5 (N.D. Cal. Sept. 28, 2012) (quoting S.F. Admin. Code § 93.2(6)–(9), (11)–(12) (emphasis omitted)). Additionally, the Ordinance makes clear what is not regulated. In particular, the Ordinance explains that the City does not intend to "regulate, limit, or curtail" advocacy, that it "respects the right of [LSPCs] to counsel against abortions," S.F. Admin. Code § 93.2(10), and that it "respects the right of individuals to express and promote" their beliefs about abortion, *id.* § 93.2(3). Further, the Ordinance specifies that, before bringing an action, "the City Attorney shall give written notice of the violation" and indicate that the LSPC "has ten (10) days in which to cure the false, misleading, or deceptive advertising." *Id.* § 93.5(a). Given this context, it is clear what the Ordinance as a whole prohibits; First Resorts's argument that a person of ordinary intelligence cannot possibly know what speech the Ordinance regulates is unpersuasive.

Furthermore, First Resort's hypothetical examples concerning what the Ordinance covers and who might be punished under its provisions do not render the Ordinance unconstitutionally vague. As the Supreme Court has explained, "speculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid in the vast majority of its intended applications.'" *Hill v. Colorado*,

530 U.S. 703, 733 (2000) (citation and internal quotation marks omitted). Thus, even if First Resort had not waived its void for vagueness challenge, its challenge would still fail on the merits.

## 2. The Ordinance Is Valid As Applied to First Resort.

The parties disagree over whether First Resort properly alleged as-applied challenges as well as a facial challenge to the Ordinance, such that First Resort waived its as-applied challenges on appeal. Without providing much explanation, the district court concluded that First Resort's challenges below were only facial. We disagree, but conclude that First Resort's as-applied challenges fail.

"An as-applied challenge contends that the law is unconstitutional as applied to the litigant's particular speech activity, even though the law may be capable of valid application to others." *Foti*, 146 F.3d at 635. For example, "a litigant may separately argue that discriminatory enforcement of a speech restriction amounts to viewpoint discrimination in violation of the First Amendment." *Id.* First Resort appears to have alleged at least three as-applied challenges below: (1) that First Resort's speech regarding the nature of its organization and services is fully protected; (2) that any commercial speech contained within First Resort's advertisements is "inextricably intertwined" with its protected speech; and (3) that the Ordinance was passed because the Board disagreed with First Resort's anti-abortion views. While we think that First Resort's as-applied arguments were properly made below such that they should be addressed on appeal, each argument fails on the merits.

### a. The Ordinance Does Not Regulate First Resort's Protected Speech.

First Resort's first as-applied argument relies on the same reasoning as its facial challenge. Specifically, First Resort asserts that because its advertisements constitute non-commercial speech, the Ordinance as applied to First Resort amounts to a content-based regulation subject to strict scrutiny. As explained above, because the Ordinance only targets false or misleading commercial speech, First Resort must demonstrate that the Ordinance regulates First Resort's own non-commercial speech to prevail on its as-applied challenge. It cannot.

As stated in the Joint Statement of Undisputed Facts, "First Resort provides counseling and basic medical services such as pregnancy tests, ultrasounds and early prenatal care to pregnant women as needed, free of charge." These services "have monetary value," and First Resort uses its online and print advertisements to compete in a competitive marketplace for those services. Indeed, First Resort uses "services like Google's Adwords" and employs "hundreds of keywords for San Francisco," such that "when an internet search is run for 'abortion San Francisco,' a link to First Resort's website can appear as a paid advertisement above the search results." "First Resort views [this] online advertising as competing with that of abortion providers for the attention of online viewers." Accordingly, as explained above, First Resort's advertisements subject to the Ordinance constitute commercial speech because they "are placed in a commercial context and are directed at the providing of services rather than toward an exchange of ideas." *Larson*, 381 N.W.2d at 181.

First Resort also has a clear economic motivation to produce successful advertisements.  To provide its services for free, First Resort engages in fundraising efforts which are furthered, at least in part, by First Resort's ability to attract new clients.  Indeed, "First Resort's employees are encouraged to share client stories because they are useful in fundraising."  Not surprisingly, then, "[a] majority of First Resort's fundraising communications reference the benefit of its services to clients and often include client stories."  Furthermore, the success of First Resort's advertising directly relates to employee compensation, as "[m]embers of First Resort's senior management team are eligible to receive bonuses based on criteria which may include . . . the number of new clients."

As such, "[First Resort's] advertisements constitute promotional advertising of services through which patronage of the clinic is solicited, and in that respect constitute classic examples of commercial speech." *Larson*, 381 N.W.2d at 181.  Because the Ordinance only regulates the false or misleading aspects of those advertisements, the Ordinance only regulates unprotected speech.  This as-applied challenge therefore fails.

### b. First Resort's Commercial Speech Is Not Inextricably Intertwined with Its Protected Speech.

First Resort also argues that, even if its advertising constitutes commercial speech, that speech is inextricably intertwined with core protected speech such that the Ordinance is subject to strict scrutiny.  While it is true that "[c]ommercial speech does not retain its commercial character when it is inextricably intertwined with otherwise

fully protected speech . . . [,] where the two components of speech can be easily separated, they are not inextricably intertwined." *Hunt*, 638 F.3d at 715 (internal citation and quotation marks omitted). Here, First Resort's commercial speech (speech concerning the limited medical services it provides) would have been easily separated from its fully protected speech (speech concerning truthful information about pregnancy) on its website.

As the City explained in its August 2, 2011 letter to First Resort, the clinic's website included "detailed information about abortion procedures offered at outpatient medical clinics" and "implie[d] on its 'Abortion Procedures' page that First Resort perform[ed] pregnancy tests and ultrasounds as a prelude to offering abortion as an outpatient procedure, or referring clients to a provider who performs abortions." As applied to First Resort, the Ordinance only would regulate the misleading aspects of this information, which conceals from the public the fact that First Resort neither performed abortions nor referred clients to abortion providers.

This misleading commercial speech is easily separated from other protected, non-misleading portions of First Resort's website, such as information regarding certain pregnancy-related issues. The website stated, for example: "If you have missed at least one period, you may be pregnant . . . . The only sure way to know is by having a pregnancy test or pelvic exam."; "Ultrasound is a technique that uses sound waves to project a picture of an embryo or fetus in the womb." Accordingly, because the commercial and fully protected portions of First Resort's speech are separable, the Ordinance is not subject to heightened scrutiny.

### c. The Ordinance Does Not Discriminate Based on Viewpoint.

Finally, First Resort contends that the Ordinance engages in impermissible viewpoint discrimination by regulating LSPCs and exempting abortion providers because the City disapproves of the LSPCs' anti-abortion views. While First Resort does not make clear whether this viewpoint discrimination challenge is as-applied or facial, its argument fails regardless of how the challenge is categorized.

A regulation engages in viewpoint discrimination when it regulates speech "based on 'the specific motivating ideology or perspective of the speaker.'" *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2230 (2015) (quoting *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995)); *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 970 (9th Cir. 2009) ("[V]iewpoint discrimination occurs when the government prohibits speech by particular speakers, thereby suppressing a particular view about a subject.") (citation and internal quotation marks omitted). Viewpoint discrimination is a "'more blatant' and 'egregious form of content discrimination,'" *Reed*, 135 S. Ct. at 2230 (quoting *Rosenberger*, 515 U.S. at 829), and regulations that discriminate on this basis are subject to strict scrutiny, *Turner Broad. Sys. Inc. v. FCC*, 512 U.S. 622, 658 (1994).

We conclude the Ordinance does not discriminate based on the particular opinion, viewpoint, or ideology of First Resort or other LSPCs. As the district court explained, whether the Ordinance applies depends on the services offered, not on the particular views espoused or held by a clinic. Indeed, the Ordinance applies regardless of what, if any, objections the LSPCs may have to certain family-

planning services. Contrary to First Resort's assertion, an LSPC may choose not to offer abortions or abortion referrals for reasons that have nothing to do with their views on abortion, such as financial or logistical reasons. *See Greater Balt.*, 721 F.3d at 288 (holding that an ordinance regulating LSPCs did not engage in viewpoint discrimination and explaining that "there may be [LSPCs] with *no* 'moral or religious qualms regarding abortion and birth-control,' . . . who refrain from providing or referring abortion or birth control for other reasons").

Moreover, contrary to First Resort's suggestion, the Ordinance regulates LSPCs because they engage in false or misleading speech, irrespective of their viewpoints. The Ordinance is aimed at protecting women from the false or misleading advertisements of certain pregnancy centers that appear to but do not actually offer abortion-related services. Thus, although the Ordinance only applies to the specific service providers that present this grave threat to women's health, we do not conclude that the Ordinance discriminates based on the LSPCs' views on abortion. Indeed, the Ordinance merely seeks to prevent LSPCs from harming women through false or misleading speech about their services and in no way restricts those entities from expressing their views about abortion to the public or their clients.

Put differently, it may be true that LSPCs engage in false or misleading advertising concerning their services because they hold anti-abortion views. However, the Ordinance does not regulate LSPCs based on any such anti-abortion views. Instead, the Ordinance regulates these entities because of the threat to women's health posed by their false or misleading advertising.

To the extent First Resort argues that the Ordinance is a viewpoint-based regulation of speech on the grounds that the City had an illicit motive, that argument also fails. "Even if [First Resort] could establish that the City had an illicit motive in adopting [the Ordinance], that would not be dispositive" because "[t]he Supreme Court has held unequivocally that it 'will not strike down an otherwise constitutional statute on the basis of an alleged illicit legislative motive.'" *Menotti v. City of Seattle*, 409 F.3d 1113, 1130 n.29 (9th Cir. 2005) (quoting *United States v. O'Brien*, 391 U.S. 367, 383 (1968)).

For the foregoing reasons, we hold that the Ordinance does not discriminate based on viewpoint.

### 3. The Ordinance Does Not Violate the Equal Protection Clause.

Next, First Resort contends the Ordinance violates the Equal Protection Clause of the Fourteenth Amendment because it burdens speech and impermissibly creates a classification based on the identity of the speaker. We disagree.

As set forth above, the Ordinance regulates only unprotected commercial speech. Thus, because the Ordinance does not unconstitutionally burden the fundamental right to free speech, the Ordinance is subject only to rational basis review. *See Rubin v. City of Santa Monica*, 308 F.3d 1008, 1019 (9th Cir. 2002) ("[R]ational basis review is appropriate unless the restriction unconstitutionally burdens a fundamental right, here, the right to free speech. Because we conclude that the restrictions do not unconstitutionally burden Rubin's right of free speech, we

find that neither do they violate his Equal Protection right."); *ACLU of Nev. v. City of Las Vegas*, 466 F.3d 784, 798 (9th Cir. 2006) ("If . . . there is no First Amendment right at issue, the City need only proffer a rational basis for the regulation."). A law survives rational basis review "so long as it bears a rational relation to some legitimate end." *Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 543 (9th Cir. 2004) (citation and internal quotation marks omitted).

By regulating false or misleading advertising concerning LSPCs' services, the Ordinance directly furthers various legitimate government ends, including preventing consumer deception, protecting women's reproductive health, and advancing the City's fiscal goals. *See* S.F. Admin Code § 93.2(8)–(9), (11)–(12). Further, the Ordinance sets out valid reasons for distinguishing between LSPCs and full-service providers. In particular, the Ordinance states that "false and misleading advertising by clinics that do not offer or refer clients for abortion or emergency contraception is of special concern to the City" because "[w]hen a woman is misled into believing that a clinic offers services that it does not in fact offer, she loses time crucial to the decision whether to terminate a pregnancy" and "may also lose the option to choose a particular procedure, or to terminate the pregnancy at all." *Id.* § 93.2(9). As the City asserts in its brief, "[w]here a clinic offers a full range of services, the consumer harms of false and misleading advertising may remain, but the threat to a woman's ability to access time-sensitive and constitutionally protected medical care does not."

Moreover, the Supreme Court has made clear that a legislative body may choose to implement different regulatory schemes for different entities without offending

the Equal Protection Clause. *See Williamson v. Lee Optical of Okla., Inc.*, 348 U.S. 483, 489 (1955) ("Evils in the same field may be of different dimensions and proportions requiring different remedies. . . . Or the reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. The legislature may select one phase of one field and apply a remedy there, neglecting the others.") (internal citations omitted); *Nat'l Ass'n for Advancement of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043, 1053 (9th Cir. 2000) ("The question is . . . whether it was rational for the California Legislature to implement different licensing schemes for psychologists, and for social workers and family counselors. It is not irrational for the Legislature to progress one step, or one profession, at a time.").

First Resort's equal protection challenge also fails to the extent First Resort separately argues that the Ordinance burdens a suspect class. Because LSPCs are not a suspect class, only rational basis review—not strict scrutiny—applies. *Cf. Tucson Woman's Clinic*, 379 F.3d at 547 (holding abortion providers are not a suspect class).

Because the Ordinance is rationally related to legitimate government interests, it survives rational basis review. Accordingly, we reject First Resort's equal protection challenge.

**4. The Ordinance is Not Preempted by California Business and Professions Code § 17500.**

Finally, First Resort argues that the Ordinance is duplicative of California's false advertising law, Cal. Bus. & Prof. Code § 17500 ("§ 17500" or "the FAL"), and therefore

preempted by state law. Although, as a general matter, the Ordinance and § 17500 both regulate false and misleading advertising, First Resort has failed to show that duplication preemption should apply here to invalidate the Ordinance. *See Big Creek Lumber Co. v. Cty. of Santa Cruz*, 136 P.3d 821, 827 (Cal. 2006) ("The party claiming that general state law preempts a local ordinance has the burden of demonstrating preemption.").

Whether a California state law preempts a local law is governed by Article XI, section 7 of the California Constitution, which states that "[a] county or city may make and enforce within its limits all local, police, sanitary, and other ordinances and regulations *not in conflict* with general laws." Cal. Const., art. XI, § 7 (emphasis added). "[A]bsent a clear indication of preemptive intent from the Legislature," California courts presume that a local law in an area of traditional local concern "is *not* preempted by state statute." *Big Creek Lumber Co.*, 136 P.3d at 827 (emphasis in original).

As this Court has recognized, "[t]he California Supreme Court has held that State Law is 'in conflict with' or preempts local law if the local law 'duplicates, contradicts, or enters an area fully occupied by general law, either expressly or by legislative implication.'" *Fireman's Fund Ins. Co. v. City of Lodi*, 302 F.3d 928, 941 (9th Cir. 2002) (quoting *Sherwin-Williams Co. v. City of L.A.*, 844 P.2d 534, 536 (Cal. 1993)). "Local legislation is 'duplicative' of general law when it is coextensive therewith." *Sherwin-Williams*, 844 P.2d at 537.

As we have previously noted, "California courts have largely confined the duplication prong of the state preemption test to penal ordinances." *Fireman's Fund*, 302 F.3d at 956.

This is because when a local ordinance and a state criminal law are duplicative, "a conviction under the [local] ordinance will operate to bar prosecution under state law for the same offense." *Id.* (quoting *Cohen v. Bd. of Supervisors of the City & Cty. of S.F.*, 707 P.2d 840, 848 n.12 (Cal. 1985)) (internal quotation marks omitted); *accord In re Portnoy*, 131 P.2d 1, 2 (Cal. 1942) ("Insofar as the [ordinance purports] to prohibit acts which are already made criminal by the Penal Code, it is clear that they exceed the proper limits of supplementary regulation and must be invalid because in conflict with the statutes which they duplicate.").

Here, because the Ordinance is civil and contains no criminal provisions or penalties, there is no double-jeopardy bar to a state criminal prosecution for the same false advertising that the Ordinance prohibits, and First Resort has failed to show that enforcing the Ordinance would interfere with enforcing state law. Still, First Resort argues that California courts have applied duplication preemption to both civil and penal ordinances. However, as the district court recognized, the cases First Resort cites in support of this argument are distinguishable as they do not indicate a civil ordinance should be invalidated on the basis of duplication preemption alone. *See, e.g.*, *Sequoia Park Assocs. v. Cty. of Sonoma*, 176 Cal. App. 4th 1270, 1292–1301 (Ct. App. 2009) (holding a local civil ordinance was preempted but not relying solely on the fact that the ordinance was duplicative of the state statute); *Korean Am. Legal Advocacy Found. v. City of L.A.*, 23 Cal. App. 4th 376, 390–93 (Ct. App. 1994) (concluding that a civil ordinance was not preempted on duplication or other grounds); *cf. S.D. Myers v. City & Cty. of S.F.*, 336 F.3d 1174, 1177–78 (9th Cir. 2003) (same). While we need not decide that duplication preemption may never apply to a civil ordinance, the fact that the Ordinance here is

civil rather than penal weighs against invalidating it based on duplication preemption.

Moreover, we are not convinced that the Ordinance duplicates the FAL, as the laws are not coextensive and do not proscribe "precisely the same acts." *Great W. Shows, Inc. v. Cty. of L.A.*, 44 P.3d 120, 127–28 (Cal. 2002) (citation and internal quotation marks omitted). First, the Ordinance, which only applies to LSPCs, S.F. Admin. Code § 93.4, is narrower in scope than the FAL, which applies to "any person, firm, corporation or association, or any employee thereof," Cal. Bus. & Prof. Code § 17500. The FAL also applies to false statements concerning the disposal and sale of real and personal property, as well as the performance and sale of professional and non-professional services, while the Ordinance only applies to the performance of pregnancy-related services. *Id.*

Second, First Resort has failed to meet its burden to show that the FAL covers all acts proscribed by the Ordinance. For instance, the Ordinance prohibits disseminating untrue or misleading statements by LSPCs "whether by statement or omission," S.F. Admin. Code § 93.4(a), while the text of the FAL does not mention omissions, Cal. Bus. & Prof. Code § 17500. Similarly, the Ordinance regulates services "expressly or impliedly offered," S.F. Admin. Code § 93.4(b), while the FAL does not mention implied offers, Cal. Bus. & Prof. Code § 17500. Further, under the Ordinance, LSPCs are prohibited both (a) from making untrue or misleading statements concerning their pregnancy-related services, and (b) from making such statements with the "intent not to perform" those services "as advertised." S.F. Admin. Code § 93.4. The FAL, on the other hand, prohibits all persons (a) from making untrue or misleading statements concerning

property or services, and (b) from making such statements with "the intent not to sell" property or services as advertised. Cal. Bus. & Prof. Code § 17500. Thus, the Ordinance differs from the FAL as it narrowly proscribes false advertising concerning the performance of services, irrespective of whether those services are offered for sale.

We also note that the Ordinance and the FAL contain entirely different enforcement schemes. A violation of the FAL is a misdemeanor offense punishable by imprisonment of up to six months, or by a fine of up to $2,500, or both, as well as a civil offense punishable by the same fine. *Id.* §§ 17500, 17536. A violation of the Ordinance cannot result in a criminal penalty, and is only punishable by a fine of up to $500. The Ordinance also authorizes the City Attorney to apply for injunctive relief tailored to the harmful effects of LSPCs' false advertising, including (a) paying for and disseminating corrective advertising in the same form as the false advertising, and (b) posting notice on the LSPCs' premises stating, among other things, whether abortions or abortion referrals are available at the LSPC. S.F. Admin. Code § 93.5.

In sum, we decline to apply duplication preemption to invalidate the Ordinance because its enforcement does not raise double-jeopardy concerns and First Resort has not demonstrated that it duplicates state law.

## CONCLUSION

For the forgoing reasons, we affirm the district court's decisions in favor of the City.

**AFFIRMED.**

TASHIMA, Circuit Judge, concurring in part and *dubitante* in part:

I concur in all of Judge Nelson's fine opinion, except for Part 4, as to which I remain *dubitante.*  Part 4 of the majority opinion holds that San Francisco's Pregnancy Information Disclosure and Protection Ordinance (the "Ordinance") is not preempted by California Business and Professions Code § 17500, California's false advertising law ("FAL").  Yet, the analysis the opinion engages in to reach this conclusion is, at best, sketchy.  Because I do not believe that this analysis can bear the weight it is asked to shoulder, I am unpersuaded that the Ordinance is not preempted by the FAL.  The question of whether the Ordinance is preempted by the FAL is an open and important one.  Because the California case law gives no clear answer to this question, I would certify the question to the California Supreme Court, *see* Cal. R. Ct. 8.548, rather than make an educated guess at the answer, as the majority does here.

The majority gives two reasons why the Ordinance is not preempted.  But, as I demonstrate below, it is far from clear that the majority's answer is the one the California Supreme Court would reach.

### *Does Duplication Preemption Apply to Non-Penal Ordinances?*

The majority "decline[s] to apply duplication preemption to invalidate the Ordinance because its enforcement does not raise double-jeopardy concerns."  Maj. Op. at 33.  Ostensibly, the majority does not hold that duplication preemption "may never apply to a civil ordinance."  Maj. Op. at 31–32.  Nevertheless, the majority reasons that "the fact that the

Ordinance here is civil rather than penal weighs against invalidating it based on duplication preemption." *Id.* The majority's conclusion relies heavily on *Fireman's Fund Ins. Co. v. City of Lodi*, 302 F.3d 928, 941 (9th Cir. 2002). But the most that the majority can tease out of *Fireman's Fund* is that "California courts have *largely* confined the duplication prong of the state preemption test to penal ordinances." Maj. Op. at 30 (citing *Fireman's Fund*, 302 F.3d at 956). (emphasis added).[1] Nothing in *Fireman's Fund* bars us from applying duplication preemption to the facts of the instant case. The majority also cannot convincingly explain why *S.D. Myers v. City & County of San Francisco*, 336 F.3d 1174, 1177–78 (9th Cir. 2003), which was decided one year after *Fireman's Fund*, should not control. There, we undertook the duplication preemption analysis to determine if a California non-penal statute preempted a San Francisco non-penal ordinance. Although we ultimately concluded that the two laws were not co-extensive and therefore not preempted, our detailed analysis of the issue casts doubt on the majority's position that duplication preemption does not apply to a non-penal ordinance.

This doubt is magnified by the California Supreme Court's long-standing recognition that duplication preemption applies to civil, non-penal ordinances. *See Chavez v. Sargent*, 339 P.2d 801, 810 n.3 (Cal. 1959) ("We recognize that in *Pipoly v. Benson* [125 P.2d 482 (Cal. 1942)] the Chief Justice was dealing with a penal ordinance and that the ordinance with which we are concerned declares no penal sanction, but we nevertheless view the quoted language as applicable here."). There is thus no firm basis in California law to

---

[1] In addition, of course, *Fireman's Fund* is not an expression of the California Supreme Court itself.

support the majority's "declin[ing] to apply duplication preemption," simply because a non-penal ordinance is involved.

Thus, while the majority "decline[s] to apply duplication preemption," Maj. Op. at 33, I respectfully suggest that, in doing so, the majority puts the shoe on the wrong foot. The question we should be asking is whether there is "clear authority" that duplication preemption does *not apply* (not that it does not "largely" apply) to a civil ordinance. There is not.

### *Does the FAL Apply to the Advertising of the Services Offered by LSPCs?*

The majority opinion goes on at great length to demonstrate that the speech engaged in by First Resort, and regulated by the Ordinance, is commercial speech. But in Part 4, the opinion implies that First Resort's speech is not commercial at all because the Ordinance "narrowly proscribes false advertising concerning the performance of [an LSPC's] services, irrespective of whether those services are offered for sale." Maj. Op. at 33. The majority implies that the FAL does not apply to services that are not "offered for sale." But this implication is unsupported by a close analysis of the text of the FAL. In fact, the FAL makes it unlawful for any person who intends "to perform services," to make any untrue or misleading statement "connected with the proposed performance" of that service. Cal. Bus. & Prof. Code §17500. The FAL contains no explicit requirement that

those services be "offered for sale."**2** *Id.* Thus, the majority does not tell us the source of its implication that the FAL requires a sales transaction.

Confusing the issue even further is the majority's reliance earlier in the opinion on *Fargo Women's Health Org., Inc. v. Larson*, 381 N.W. 2d 176 (N.D. 1986) ("*Larson*"), which "upheld a preliminary injunction preventing a 'pro-life' pregnancy clinic from engaging in 'false and deceptive advertising . . . [that] misleads persons into believing that abortions are conducted at the clinic with the intent of deceptively luring those persons to the clinic to unwittingly receive anti-abortion propaganda.'" Maj. Op. at 16–17 (quoting *Larson*, 381 N.W.2d at 177, 179). The majority further observes that the North Dakota Supreme Court "did not find that the lack of payment for services was dispositive to the commercial speech inquiry." *Id.* at 17. It goes on to observe that "the Help Clinic's advertisements are placed in a commercial context and are directed at the providing of services rather than toward an exchange of ideas." *Id.* at 17 (quoting *Larson*, 381 N.W.2d at 181). Thus, the majority approvingly quotes *Larson* that, "[i]n effect, the Help Clinic's advertisements constitute promotional advertising of services through which patronage of the clinic is solicited, and in that respect constitute classic examples of commercial speech." *Id.* at 17 (quoting *Larson*, 381 N.W.2d at 181).

---

**2** There is a separate and independent clause at the end of the FAL which makes it unlawful to make any misleading statement "as part of a plan or scheme with the intent not to sell property or services" at the price advertised. *Id.* This is the only mention of the word "sale" or any of its variants in the FAL.

What the majority does not tell us is that the law at issue in *Larson* was "North Dakota's false advertising statute, Chapter 51-12 N.D.C.C." 381 N.W.2d at 182.  That statute is substantially similar to California's FAL and the preliminary injunction issued in that case was issued under the North Dakota false advertising statute.  Thus, by necessary implication, the North Dakota Supreme Court held that the false advertising statute applied to the Help Clinic's advertising, even though no *sale* was involved.[3]  It thus seems entirely plausible that the California FAL, which is similarly-worded to the North Dakota statute, could also be construed to cover the type of advertising in which First Resort and other LSPCs engage.  Certainly, there is no authority holding the contrary.

Further, without citing any supporting authority, the majority implies that the regulation of false advertising is a matter of "local concern."  Maj. Op. at 30 ("California courts presume that a local law in an area of traditional local concern 'is *not* preempted by state statute.'" (quoting *Big Creek Lumber Co. v. Cty. of Santa Cruz*, 136 P.3d 821, 827 (Cal. 2006))).  First, *Big Creek Lumber* involved a local zoning regulation and thus does not speak to preemption under the FAL.  In the area of false advertising, albeit in the context of federal preemption, the California Supreme Court has stated that "consumer protection laws such as the . . . false advertising law . . . are within the *states' historic police*

---

[3] It is true that the North Dakota Supreme Court said that it was not deciding whether the false advertising statute applied to the case and that any opinion on the merits would be advisory.  *Id.* at 182–83.  It cannot be gainsaid, however, that a preliminary injunction was issued under the North Dakota false advertising statute and that injunction was affirmed on appeal by the North Dakota Supreme Court.

powers. . . ." *Farm Raised Salmon Cases*, 175 P.3d 1170 , 1176 (Cal. 2008) (emphasis added). We have likewise stated that "consumer protection laws have traditionally been in *state* law enforcement hands." *Chae v. SLM Corp.*, 593 F.3d 936, 944 (9th Cir. 2010) (emphasis added) (citations omitted).

Moreover, the statewide FAL was enacted over 75 years ago, in 1941. It has been in effect ever since, with only minor amendments, and with few, if any, challenges from local ordinances. The recently-enacted Ordinance, of course, has no such lineage.

Finally, the majority also asserts that

> First Resort has failed to meet its burden to show that the FAL covers all acts proscribed by the Ordinance. For instance, the Ordinance prohibits disseminating untrue or misleading statememts by LSPCs "whether by statement or omission," while the text of the FAL does not mention omissions.

Maj. Op. at 32 (internal citations omitted). But this simplistic view overlooks the substantial body of case law under the FAL. California courts have made clear that: "Under the False Advertising Law . . . '[a] perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, *such as by failure to disclose other relevant information* is actionable.'" *Consumer Advocatets v. Echostar Satellite Corp.*, 8 Cal. Rptr. 3d 22, 30 (Ct. App. 2003) (emphasis added); *see also Day v. AT&T Corp.*, 74 Cal. Rptr. 2d 55 (Ct. App. 1998) ("A perfectly true statement couched in a manner that is likely to mislead or deceive the consumer, *such as by failure to disclose other relevant*

*information*, is actionable under the [FAL]." (emphasis added)); *Paduano v. Am. Honda Motor Co.*, 88 Cal. Rptr. 3d 90, 127 (Ct. App. 2009) (same) (quoting *Day*). As can plainly be seen, the majority's assertion that the FAL does not prohibit the making of misleading omissions ignores California case law and is patently untrue.

### We Should Certify This Question to the California Supreme Court.

> Certification is warranted if there is no controlling precedent and the California Supreme Court's decision could determine the outcome of a matter pending in our court. This appeal not only meets both criteria, but also presents an issue of significant public importance.

*Flo & Eddie, Inc. v. Pandora Media, Inc.*, 851 F.3d 950, 954 (9th Cir. 2017) (citing Cal. R. Ct. 8.548(a)).

Whether preemption applies to the Ordinance is outcome determinative—if it does, the Ordinance must be struck down. And, as I have shown above, the answer is far from certain—there is no directly controlling precedent. Moreover, the question is an important one in a broader sense. Whether the FAL covers advertising of the kind at issue here will dictate not only the outcome of this case, but also whether other cities and counties throughout California can copycat the Ordinance. Or whether the FAL itself governs such commercial speech. This broad public interest makes this question one particularly suitable for certification.

True, certification is unnecessary when the state's law "is rather well-defined." *Sygenta Seeds, Inc. v. Cty. of Kauai*, 842 F.3d 669, 681 (9th Cir. 2016). On the other hand, we certify issues "because they require interpretation of the state [law at issue] beyond that found in state or federal cases." *Barnes-Wallace v. City of San Diego*, 607 F.3d 1167, 1175 (9th Cir. 2010). I submit that it cannot seriously be contended that the answer to the question here is "well-defined." On the contrary, whether preemption applies to and ousts the Ordinance requires an interpretation of the FAL "beyond that found in state or federal cases." We do the California public, as well as the litigants, a disservice by refusing to certify this controlling question to the one body that can provide a definitive answer: the California Supreme Court.

·  ●  ·

Because I remain *dubitante* on the state law preemption issue, I respectfully suggest that we should certify the question of whether the Ordinance is preempted by the FAL to the California Supreme Court.